Michael Newdow, *pro hac vice*
PO Box 233345
Sacramento, CA  95823
(916) 427-6669

Rosanna Fox, NH SBN: 17693
O'Brien Law Firm P.C.
One Sundial Avenue, Fifth Floor
Manchester, NH  03103
(603) 627-3800

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

## Civil Action No. 1:07-cv-356-JM

THE FREEDOM FROM RELIGION FOUNDATION;
JAN DOE AND PAT DOE, PARENTS; DOECHILD-1, DOECHILD-2 and
DOECHILD-3, MINOR CHILDREN;

                                                    Plaintiffs,

v.

THE CONGRESS OF THE UNITED STATES OF AMERICA;
THE UNITED STATES OF AMERICA;
THE HANOVER SCHOOL DISTRICT ("HSD");
THE DRESDEN SCHOOL DISTRICT ("DSD");
SCHOOL ADMINISTRATIVE UNIT 70 ("SAU #70");

                                                    Defendants.

---

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

---

1   Plaintiffs, through counsel, submit this Memorandum in Support of Plaintiffs'

2   Motion for Protective Order.

3

4   **BACKGROUND**

5   This lawsuit has been filed with pseudonyms, rather than true names, for all

6   Plaintiffs except Freedom From Religion Foundation ("FFRF"). As alleged in the

7   Complaint, these pseudonymous Plaintiffs are all residents and citizens of

8   Hanover, New Hampshire. This case involves objections to the use of the words,

9   "under God," in the Pledge of Allegiance as recited in the public schools. Each of

10  the pseudonymous Plaintiffs is a minor child enrolled in a public school where the

11  Pledge is recited, or the parent of such a child. It is believed that disclosure of the

12  actual and true names of either the children or their parents will subject the minor

13  children (and their parents) to potential harm.

14

15  **LAW AND ARGUMENT**

16  "Judicial proceedings are supposed to be open … in order to enable the

17  proceedings to be monitored by the public. The concealment of a party's name

18  impedes public access to the facts of the case, which include the parties' identity."

19  *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004). Nonetheless, "[t]he

20  presumption that parties' identities are public information, and the possible

prejudice to the opposing party from concealment, can be rebutted by showing that

the harm to the plaintiff … exceeds the likely harm from concealment. Id. In other

words:

> In cases where the plaintiffs have demonstrated a need for anonymity, the
> district court should use its powers to manage pretrial proceedings, see Fed.
> R. Civ. P. 16(b), and to issue protective orders limiting disclosure of the
> party's name, see Fed. R. Civ. P. 26(c), to preserve the party's anonymity to
> the greatest extent possible without prejudicing the opposing party's ability
> to litigate the case.

*Doe v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000).

It should initially be noted that the United States Supreme Court has permitted

pseudonymous filings in precisely this type of litigation. *Santa Fe Independent*

*School District v. Doe*, 530 U.S. 290 (2000) (parents individually and as "next

friends" to their children challenged prayers at public high school football games).[1]

This Court has the authority in its discretion to enter a protective order to control

discovery and protect the rights of the parties. *Doe v. Porter*, 370 F.3d 558, 560-

561 (6th Cir. 2004) (upholding lower court's grant of protective order allowing the

use of pseudonyms in challenge to religious instruction in schools); *Doe v. Stegall*,

653 F.2d 180 (5th Cir. 1981) (reversing lower court's denial of protective order

allowing for pseudonyms. The *Stegall* court noted that "religion is perhaps the

---

[1] Subsequently, the high Court decided a case involving a pseudonymous filing
where the justification appears to be nowhere near as compelling as in the instant
action. In *City of San Diego v. Roe*, 543 U.S. 77 (2004), a police officer who was

*FFRF v. U.S. Congress*     MEMORANDUM IN SUPPORT OF PROTECTIVE ORDER     January 22, 2008
Page 2 of 7

1    quintessentially private matter," and that the plaintiffs' disclosures about their

2    religion "have invited an opprobrium analogous to the infamy associated with

3    criminal behavior." *Id.*, at 186).

4        This Circuit has indicated that pseudonymous filings can be appropriate even

5    when the plaintiffs are adults. *Brown v. Secretary of Health & Human Servs.*, 46

6    F.3d 102, 105 (n.5) (1st Cir. 1995) (where "[t]he district court granted named

7    plaintiffs leave to use pseudomyms in order to protect their privacy," apparently

8    due solely to the plaintiffs having low income, necessitating AFDC benefits.)

9    When children are involved, the need for protection is obviously greater. In fact,

10   this was discussed relative to a statutory prohibition in *United States v. Three*

11   *Juveniles*, 61 F.3d 86 (1st Cir. 1995).

12       A sister circuit has looked at this matter in some detail. Holding "that a party

13   may preserve his or her anonymity in judicial proceedings in special circumstances

14   when the party's need for anonymity outweighs prejudice to the opposing party

15   and the public's interest in knowing the party's identity," *Advanced Textile*, 214

16   F.3d at 1068, the Ninth Circuit found three factors to be of consequence:

17       [I]n cases where, as here, pseudonyms are used to shield the anonymous party
18       from retaliation, the district court should determine the need for anonymity by
19       evaluating the following factors: (1) the severity of the threatened harm, (2) the
20       reasonableness of the anonymous party's fears, and (3) the anonymous party's
21       vulnerability to such retaliation.

terminated from his job because of sexually explicit videotapes he had made was
permitted to file pseudonymously.

1
2  *Id*. In the instant case, the evaluation of those factors demonstrates that need. Even

3  the mildest threatened harm – harassment of children in the public schools –

4  warrants the requested relief. Additionally – as the attached Exhibits show – the

5  fears are reasonable, and each of the children (and each adult) is vulnerable to the

6  harms.

7     Exhibit A pertains to Joann Bell, a parent who had three children enrolled in a

8  public school district. Ms. Bell filed a federal lawsuit to stop school-sponsored

9  prayer meetings. She has written:

10    After I filed the lawsuit, my family and I received numerous threatening
11    telephone calls and letters. These threats promised physical harm and even
12    death to my family members and me as a result of my involvement as a
13    plaintiff in the lawsuit. Many of the telephone calls told me that our home
14    would be burned. I could not even perform such simple tasks as shopping
15    for groceries in the community without being confronted by other persons
16    about the lawsuit.
17
18  Additionally, when she responded to a bomb threat at her children's school,

19  "several school employees circled the car. One of the employees grabbed me by

20  the hair of the head and battered my head against the frame of the car's door."

21  After the family's home "was burned in a fire of suspicious origin," the family

22  moved from the school district "motivated by a grave concern for the safety of our

23  family." Exhibit A.

24     Megan Black – a third grader – was grabbed and yanked by her public school

25  teacher for not reciting the now-religious Pledge of Allegiance. This was followed

1   by more than two years of taunts and harassment by her fellow students, which did

2   not end until she changed schools. Exhibit B.

3        Bailey Wood was pushed up against a building by a classmate who made the

4   sign of the cross, was called a "monkey" because she believed in evolution, and

5   was called "stupid" because she didn't believe in God. This apparently all stemmed

6   from the fact that her atheism was exposed when she didn't say the words, "under

7   God," in the Pledge. Exhibit C.

8        "I dreaded the first day of school each and every year," writes Abigail

9   Schweter, because her not saying the Pledge as a child resulted in her being

10   "ostracized" and risked a "confrontation with the teacher." Exhibit D.

11        Ellen Janowitz was "frequently ridiculed in front of the class" by her teacher,

12   because she could not, in good conscience, recite the entire Pledge. At age 15, she

13   suffered "stares and silence of my fellow students [that] were excruciating [and]

14   are still painful to recall" twenty years later. Exhibit E.

15        A book written by Professor Frank Ravitch of the Michigan State University

16   College of Law details numerous other cases involving religious outsiders.[2] For

17   instance, the Herdahls were a Lutheran family in a Southern Baptist Mississippi

18   town. When the Herdahl children did not participate in "decidedly Southern

19   Baptist" public school prayers, they were harassed by "[b]oth teachers and

1  students." When the family filed suit to stop this clearly unlawful practice, "the

2  harassment got even worse. Her family received bomb threats. She received a

3  death threat, and the name calling and ridicule worsened."[3]

4      A second story recounted by Professor Ravitch concerned individuals in

5  Alabama. The Herrings were "a Jewish family whose children had been subjected

6  to severe religious discrimination and harassment in school." The children "were

7  physically assaulted by classmates because of their religion; swastikas were drawn

8  on their lockers, bookbags, and jackets; and they were regularly taunted by the

9  other children." The mother, in a sworn statement to the Court, stated:

10      Every day that I send my children to Pike County schools, I wonder if I am
11      sending them into a war zone. … The consequences of the school environment
12      on my children's psyches are devastating. My children are growing up
13      believing that America is a caste society and they are untouchables – except for
14      the purpose of getting beaten up. One child suffered "serious nightmares."[4]

15

16      "Rachel Bauchman, a Jewish high school student, objected to overtly religious

17  songs, which were sung at high school graduations by the high school choir of

18  which she was a member. … Rachel obtained a court order prohibiting the

19  graduation songs. However, at the urging of parents and some students, the choir

20  performed one of the religious songs anyway. … When Rachel and her mother got

---

[2] Ravitch FS. *School Prayer and Discrimination: The Civil Rights of Religious Minorities and Dissenters.* (Northeastern University Press: Boston, 2001).
[3] Id., at 8-9.
[4] Id., at 9-11.

1  up to leave – Rachel in tears – parents and students in the audience jeered and spat

2  on them."[5]

3      The proposed ORDER provides Defendants with adequate means of

4  ascertaining the residency status, taxpayer status, or school enrollment status of the

5  Plaintiffs. Discovery, if needed, can also be accomplished under the proposed

6  ORDER while preserving Defendants' rights.

7

8                          **<u>CONCLUSION</u>**

9      Good cause having been shown, Plaintiffs respectfully request that the Court

10  preserve the anonymity of the Plaintiffs by entering a protective order.

11

12  Respectfully submitted,

13

14  /s/ - Michael Newdow                    /s/ - Rosanna Fox

15

16  Michael Newdow, *pro hac vice*          Rosanna Fox, NH SBN: 17693
17  Counsel for Plaintiffs                  O'Brien Law Firm, P.C.
18  PO Box 233345                           One Sundial Avenue, #510
19  Sacramento  CA  95823                   Manchester, NH  03103
20
21  Phone:   (916) 427-6669                 Phone:   (603) 627-3800
22
23  E-mail:  NewdowLaw@gmail.com            E-mail:  rosief13@comcast.net
24
25
26  January 22, 2008

---

[5] <u>Id.</u>, at 11-12.