IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| THE FREEDOM FROM RELIGION FOUNDATION, *et al.* <br><br> *Plaintiffs*, <br><br> v. <br><br> THE CONGRESS OF THE UNITED STATES OF AMERICA, *et al.* <br><br> *Defendants*, <br><br> THE STATE OF NEW HAMPSHIRE, <br><br> *Defendant-Intervenor*, <br> and <br><br> MURIEL CYRUS, *et al.*, <br><br> *Defendant-Intervenors.* | Civil Action No. 07-356 (SM) |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
OF DEFENDANT-INTERVENORS MURIEL CYRUS, *et al.***

| | |
|---|---|
| Bradford T. Atwood (NH Bar No. 8512) <br> CLAUSON ATWOOD & SPANEAS <br> 10 Buck Road <br> Hanover, NH 03755 <br> Telephone: (603) 643-2102 <br> Facsimile: (603) 643-1287 | Kevin J. Hasson (admitted *pro hac vice*) <br> Eric C. Rassbach (admitted *pro hac vice*) <br> THE BECKET FUND FOR RELIGIOUS LIBERTY <br> 1350 Connecticut Ave., NW, Suite 605 <br> Washington, DC 20036 <br> Telephone: (202) 955-0095 <br> Facsimile: (202) 955-0090 |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I.   Plaintiffs have neither organizational standing nor standing to challenge
     the Pledge itself. ............................................................................................................. 2

     A.   FFRF lacks organizational standing because its claims require the personal
          participation of affected members already named in the suit. ............................... 2

     B.   Plaintiffs make no attempt to show standing (taxpayer or otherwise) to
          challenge the Pledge itself, rather than the School Districts' Pledge policies. ......... 3

II.  Plaintiffs state no claim for relief under the Establishment Clause. .................................... 4

     A.   Plaintiffs completely fail to respond to Schoolchildren's argument that the
          God of the Pledge is a philosophical idea, not a theological one. ......................... 5

     B.   Plaintiffs' objections entitle them only to *Barnette* relief—the right to opt out. ...... 6

     C.   Pledge recitation passes the *Lemon*/*Boyajian* test. ................................................. 7

          1.   There is no impermissible purpose. ............................................................ 7

          2.   The Pledge does not have the primary effect of advancing religion. .......... 8

III. Plaintiffs abandon or fail to support their other claims. ...................................................... 10

CONCLUSION ............................................................................................................................ 10

CERTIFICATE OF SERVICE

# **TABLE OF AUTHORITIES**

**Cases**

*Access 123, Inc.* v. *Markey's Lobster Pool, Inc.,* 2001 WL 920051 (D.N.H. 2001) ...................... 3
*Access 4 All, Inc.* v. *Trump Int'l Hotel and Tower*, 458 F.Supp.2d 160 (S.D.N.Y. 2006) ............ 3
*Barnette* v. *West Virginia Board of Education*, 47 F.Supp 241 (S.D.W.Va. 1942) ................ 7, 10
*Boyajian* v. *Gatzunis*, 212 F.3d 1 (1st Cir. 2000) ....................................................................... 4, 7
*City of New Orleans* v. *Dukes*, 427 U.S. 297 (1976) .................................................................. 10
*Crowley v. Smithsonian Inst.*, 636 F.2d 738 (D.C. Cir. 1980) ........................................................ 2
*Disabled in Action of Metropolitan New York* v. *Trump Int'l Hotel & Tower,*
  2003 WL 1751785 (S.D.N.Y. 2003) ........................................................................................ 3
*Elk Grove Unified Sch. Dist.* v. *Newdow*, 124 S.Ct. 2301 (2004) .................................................. 8
*Hunt* v. *Washington State Apple Advertising Com'n*, 432 U.S. 333, 343 (1977). ...................... 2, 3
*Jones* v. *United States*, 529 U.S. 848, 857 (2000) .......................................................................... 6
*Lemon* v. *Kurtzman*, 403 U.S. 602 (1971) ................................................................................ 4, 7
*McCreary County* v. *ACLU of Kentucky*, 545 U.S. 844, 860 (2005)............................................. 7
*Pharmaceutical Care Management Ass'n* v. *Rowe,* 429 F.3d 294 (1st Cir. 2005).......................... 3
*Seminole Tribe* v. *Florida*, 517 U.S. 44, 67 (1996) ....................................................................... 9
*United Food and Commercial Workers Union Local 751* v. *Brown Group,*
  517 U.S. 544, 554 (1996) ......................................................................................................... 3
*United States ex rel. Attorney General* v. *Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909) ... 6
*West Virginia State Board of Education* v. *Barnette*, 319 U.S. 624 (1943) .......................... passim

**Statutes**

4 U.S.C. § 4................................................................................................................................ 1, 7

**Other Authorities**

EDWARD CRAIG, THE SHORTER ROUTLEDGE ENCYCLOPEDIA OF PHILOSOPHY (2005) ................... 5
H.R. REP. NO. 1693, 83d Cong., 2d Sess. ..................................................................................... 8
INTRODUCTION TO ARISTOTLE (Richard McKeon, ed., 2d. ed. 1973)............................................ 5
ISAAC HUSIK, A HISTORY OF MEDIAEVAL JEWISH PHILOSOPHY (1916).......................................... 5
JOEL L. KRAEMER, PHILOSOPHY IN THE RENAISSANCE OF ISLAM (1986) ....................................... 5

**INTRODUCTION**

Despite the 73 pages they spend responding to the various motions to dismiss, Plaintiffs' opposition is most remarkable for what it doesn't say.  Plaintiffs don't respond at all to Schoolchildren's argument that the Court should seek to construe 4 U.S.C. § 4 in a way that renders it constitutional.  They don't explain why the word "God" must mean the specific "(Christian) Monotheistic" deity they don't believe in, rather than any number of other, equally plausible non-religious meanings, including the Philosophers' God.  They don't explain why they are any different than Jehovah's Witnesses—people who also sit out recitation of the Pledge because of their religious scruples.  And they also don't explain why they should get a heckler's veto based on their beliefs about religion while the Jehovah's Witnesses in *Barnette* didn't.

Plaintiffs do make a couple of important admissions in response.  First, they admit that the only FFRF members affected by this lawsuit are the Doe Plaintiffs.  That means that FFRF can't meet the standard for organizational standing, since its individual members will have to participate in the lawsuit as named (albeit anonymous) plaintiffs.  It also means that FFRF's participation is entirely superfluous—FFRF is in fact a vanity plaintiff.

Second, Plaintiffs admit that the Congress' purpose in amending the Pledge in 1954 was to distinguish the American system of inalienable rights from the Soviet system of rights given by the State and taken away by the State.  Plaintiffs' complaint turns out to be about the "manner" in which Congress acted, not its purpose for acting.

Plaintiffs want this Court to treat the words "one nation under God" as a declaration of an established religion like the one they open their opposition with.  But saying it doesn't make it so.  Plaintiffs are entitled to their opinion that the Pledge establishes "Monotheism," just as creationists are entitled to believe that the Smithsonian is establishing the religion of "Secular

1

Humanism," *see Crowley v. Smithsonian Inst.*, 636 F.2d 738, 742-43 (D.C. Cir. 1980) or the Jehovah's Witnesses in *Barnette* were entitled to believe that the Flag is an idol. But the Constitution does not require any government to share those opinions. It requires only that the government protect a "sphere of intellect and spirit" for those whose religious beliefs do not allow them to participate. *West Virginia State Board of Education* v. *Barnette*, 319 U.S. 624, 642 (1943). That sphere of conscience is protected by the remedy they already have—opting out of reciting the Pledge.

## ARGUMENT

I.  Plaintiffs have neither organizational standing nor standing to challenge the Pledge itself.

   A. FFRF lacks organizational standing because its claims require the personal participation of affected members already named in the suit.

Schoolchildren demonstrated that FFRF lacked organizational standing because it failed to allege that it had any "members [who] would otherwise have standing to sue." *Hunt* v. *Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977) ; *see* Schoolchildren Mem. at 4-5. Specifically, FFRF failed to identify members with a cognizable injury, because none of its members paid taxes or attended school in the defendant school districts. Schoolchildren Mem. at 4-5. FFRF cannot claim organizational standing on the basis of its members' dislike for the Pledge, however vehement.

In its response, FFRF admitted that its only members who pay taxes to or attend the Hanover School District are the named Doe Plaintiffs. Opp. at 10-11. It does not allege that it has any other members who live and pay taxes in Hanover. *Id.* Because FFRF failed to concretely allege any of these facts in its Complaint—clarifying them only in response to a motion to dismiss—it should be dismissed outright. But even were it properly pleaded, the presence of the Does cannot save FFRF. The very nature of organizational standing is that "an

2

association may have standing to assert the claims of its members." *Hunt,* 432 U.S. at 342. Where the only eligible members are already asserting their ***own*** claims, organizational standing is superfluous. *See, e.g.*, *Access 4 All, Inc.* v. *Trump Int'l Hotel and Tower*, 458 F.Supp.2d 160, 173-75 (S.D.N.Y. 2006) (dismissing organizational plaintiff because its claims were identical to named member plaintiff's claims) (citing *Access 123, Inc.* v. *Markey's Lobster Pool, Inc.,* 2001 WL 920051 at *4 (D.N.H. 2001); *Disabled in Action of Metropolitan New York* v. *Trump Int'l Hotel & Tower,* 2003 WL 1751785, at *10 (S.D.N.Y. 2003)).  FFRF should not be permitted to bring a case merely because it wants its name in the caption.

FFRF's standing also fails because the Does' participation is necessary for both the claim asserted and the relief requested. *See Hunt,* 432 U.S. at 343.  Not only will the Court require evidence from the named Doe Plaintiffs supporting their claims of coercion, it will also require the Doe Plaintiffs' participation so that it may assess their claims for damages.  *See* Complaint at 20 (requesting "other and further relief").  The third prong of the *Hunt* test for organizational standing is generally "understood to preclude associational standing when an organization seeks damages on behalf of its members." *United Food and Commercial Workers Union Local 751* v. *Brown Group,* 517 U.S. 544, 554 (1996).[1] Here, the Does' participation is necessary in order to assess damages and recover relief.  FFRF may not assert organizational standing.

    B.  Plaintiffs make no attempt to show standing (taxpayer or otherwise) to challenge the Pledge itself, rather than the School Districts' Pledge policies.

Schoolchildren demonstrated that Plaintiffs lack both state and federal taxpayer standing to challenge the Pledge.  Schoolchildren Mem. at 4-6.  Plaintiffs fail to defend their claim for

---

[1] *See also Pharmaceutical Care Management Ass'n* v. *Rowe,* 429 F.3d 294, 307 (1st Cir. 2005) (explaining that where plaintiffs have claims for damages, individual participation is necessary "so that the members [rather than the association] could recover their own damages.").

3

taxpayer standing at all, claiming standing based upon "stigmatic injury" instead.[2] Schoolchildren Mem. at 4-11. They continue to assert generalized grievances based on the language of the Pledge itself, without demonstrating that the existence of the Pledge is related to an appropriation or that it increased Plaintiffs' taxes in any appreciable way. *See id.* But an appropriation (or at least an appreciable increase in tax dollars) is a necessary prerequisite for both federal and state taxpayer standing. Schoolchildren Mem. at 4-6. Because Plaintiffs have failed to allege any tax appropriation for the Pledge, they cannot establish taxpayer standing.

II.     Plaintiffs state no claim for relief under the Establishment Clause.

Schoolchildren argued in their opening brief that the Pledge does not implicate the Establishment Clause at all, because the word "God" as used in the Pledge has a philosophical rather than a theological meaning. Schoolchildren Mem. at 9-18. The God of the Pledge is not a "(Christian) Monotheistic" God, but the Philosophers' God—a concept that originated by at least the time of Aristotle, well before the advent of Christianity. Schoolchildren Mem. at 8-9. Plaintiffs don't respond to this argument, nor to Schoolchildren's argument that where a federal statute has more than one possible meaning, this Court is charged with construing the statute to ensure constitutionality. *See* Opp. *generally*. Plaintiffs also fail to respond to Schoolchildren's argument that *Barnette* controls the outcome of this case.

The Pledge and its recitation are also constitutional even if the Establishment Clause and the *Lemon/Boyajian* test are implicated. Plaintiffs make no argument about the School Districts' purpose and admit that Congress' predominant purpose was to distinguish between the American and Soviet systems of rights. Opp. at 34-36. Plaintiffs rely on "principled dicta" from dissenting opinions to distinguish statements in Supreme Court precedent stating that the Pledge does not

---

[2]     "Stigmatic injury" does nothing to help FFRF, which admittedly has no presence in the defendant school districts aside from the Does.

4

advance religion.  Opp. 56-60.  Finally, Plaintiffs admit that the entanglement prong is not implicated.  Opp. at 34 n.23.

> A. Plaintiffs completely fail to respond to Schoolchildren's argument that the God of the Pledge is a philosophical idea, not a theological one.

Schoolchildren demonstrated in their opening memorandum that the Pledge is a statement of philosophy, not theology, and thus cannot offend the Establishment Clause.  Indeed, the specific words "under God" have been used by Bracton, Coke, Blackstone, Washington, Hamilton, Madison, Jefferson, Lincoln and others throughout Anglo-American legal history to recognize that the rights of every person are rooted in a source outside of, and prior to, the State.  Schoolchildren Mem. at 9-18.  The God they referred to was the Philosophers' God—the God that Aristotle, Avicenna, Maimonides, Leibniz and others derived from the structure of human reason itself.  *See* ARISTOTLE, METAPHYSICS at 12.7 (1072b), *reproduced in* INTRODUCTION TO ARISTOTLE 321 (Richard McKeon, ed., 2d. ed. 1973) (using the term "God" to describe his famous "first mover" that, he reasoned, "exists of necessity, and in so far as it exists by necessity, its mode of being is good."); JOEL L. KRAEMER, PHILOSOPHY IN THE RENAISSANCE OF ISLAM 289 n.47 (1986) (Avicenna); ISAAC HUSIK, A HISTORY OF MEDIAEVAL JEWISH PHILOSOPHY xliii-xlv (1916);  (Maimonides); EDWARD CRAIG, THE SHORTER ROUTLEDGE ENCYCLOPEDIA OF PHILOSOPHY 320 (2005) (Leibniz). Plaintiffs may object to the idea of a Philosopher's God on philosophical or even religious grounds, but that does not change the fact that the idea itself is a philosophical one.  And a philosophical idea cannot violate the Establishment Clause.

Moreover, Plaintiffs' reply amply demonstrates that their case is entirely dependent on this Court deciding that the term "God" is always and forever a religious term.  For if there is even a single gloss of the term "God" that is not religious, then this Court has to rule against

5

Plaintiffs. That's because this Court is charged with construing federal statutes in a way that ensures their constitutionality. *See Jones* v. *United States*, 529 U.S. 848, 857 (2000) (quoting *United States ex rel. Attorney General* v. *Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909)) ("'where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter.'"). Thus if this Court *can* conclude that the God of the Pledge is the Philosopher's God, it *must* conclude that the God of the Pledge is the Philosopher's God.

B.     Plaintiffs' objections entitle them only to *Barnette* relief—the right to opt out.

The Establishment Clause is also not implicated because Plaintiffs already have the only remedy they would be entitled to under the First Amendment—the right to sit the Pledge out. In *Barnette*, the Jehovah's Witness plaintiffs sought relief from a statute that required them to recite the Pledge. *Barnette*, 319 U.S. at 629. The Court ruled that West Virginia could not constitutionally require them to recite the Pledge. *Id.* at 642. But the Court did not hold that the government could not lead children in reciting the Pledge in the *Barnette* plaintiffs' presence. *Id.*

Under the approach Plaintiffs urge, mere recital of the Pledge in the presence of those who believe it to be idol worship would violate the Establishment Clause, because it purportedly coerces those children to recite the Pledge in violation of their religious beliefs. But *Barnette* was about compulsory participation in Pledge recitation, not merely being present while the Pledge is said. *See id.* at 631 (challenge to "compulsory ***salute and slogan***"); *id.* at 644 (Black and Douglas, JJ., concurring) ("we cannot say that a failure, because of religious scruples, ***to assume a particular physical position and to repeat the words*** of a patriotic formula creates a grave danger to the nation")*; id.* at 645 (Murphy, J., concurring) (reciting Pledge "***join[ing] in a public chorus*** of affirmation of private belief"); *Barnette* v. *West Virginia Board of Education*,

6

47 F.Supp 241, 255 (S.D.W.Va. 1942) ("the regulation of the Board requiring that school children salute the flag is void in so far as it applies to children having conscientious scruples *against giving such salute*") (emphases added). Thus the Constitution requires only that children be allowed to opt out of the Pledge, not that they be given the right to silence others.

    C.    Pledge recitation passes the *Lemon*/*Boyajian* test.

Pledge recitation passes the test first set out in *Lemon* v. *Kurtzman*, 403 U.S. 602 (1971), as interpreted by the First Circuit in *Boyajian* v. *Gatzunis*, 212 F.3d 1 (1st Cir. 2000).

    1.    There is no impermissible purpose.

In their motion to dismiss, Schoolchildren argued that (a) the only relevant purpose was Hanover School District's purpose in instituting Pledge recitation in its schools and (b) that the only "ostensible and predominant purpose" for that policy was to comply with New Hampshire law. Schoolchildren Mem. at 6-7 (citing *McCreary County* v. *ACLU of Kentucky*, 545 U.S. 844, 860 (2005)). Plaintiffs make no response to this argument, focusing instead exclusively on Congress' purpose in amending the Pledge statute in 1954. *See* Opp. at 34-36 (discussing *Lemon*'s purpose prong solely with respect to 1954 amendment).

Plaintiffs also fail to respond with any reason why Congress' purpose is relevant to their claims against the School Districts. *See* Opp. *generally*; *see also* Complaint *generally* (no mention of School Districts' purpose). 4 U.S.C. § 4 is not self-executing: it does not require Plaintiffs to say the Pledge, nor does it require New Hampshire or the school district Defendants to institute Pledge recitation policies. Congress' purpose in amending 4 U.S.C. § 4 is therefore simply irrelevant to Plaintiffs' claims against the School Districts.

As for Plaintiffs' Establishment Clause claims against the Federal Defendants, on reply Plaintiffs admit that Schoolchildren, Schoolchildren Mem. at 14-17 (and the other Defendants)

7

were right: Congress had the purpose in 1954 of distinguishing the American system of inalienable rights from the Soviet system of rights on sufferance. *See* Opp. at 35-36. Plaintiffs' purpose argument is instead revealed to be a quibble about *how* Congress went about distinguishing the two systems: "where Congress sought 'to highlight a foundational difference between the United States and Communist nations,' the Constitution was still violated because of the illicit, purely religious *manner* in which it engaged in that purported goal." Opp. at 35 (quoting Federal Defendants' Br. at 39) (emphasis added). This novel argument is not really about Congress' purpose—it is an argument about the bounds of proper debate within Congress. The argument fails because it is not this Court's job to go back and edit legislative history from 1954 to ensure that it doesn't offend Plaintiffs' sensibilities.

Plaintiffs also make no effort to explain why Justice O'Connor was wrong to hold that "those legislators also had permissible secular objectives in mind—they meant, for example, to acknowledge the religious origins of our Nation's belief in the 'individuality and the dignity of the human being.'" *Elk Grove*, 542 U.S. at 41 (O'Connor, J., concurring in the judgment) (quoting H.R. REP. NO. 1693, 83d Cong., 2d Sess., 1.). For Plaintiffs, Justice O'Connor's analysis is convincing only when they cite her as support, *see, e.g.,* Opp. at 66 n.35, not when she analyzes the Pledge. *See* Opp. at 30.

2. The Pledge does not have the primary effect of advancing religion.

In their opening memorandum, Schoolchildren offered three reasons why the Pledge does not have the primary effect of advancing religion: (1) the Pledge states our nation's commitment to inalienable rights; (2) the Supreme Court has often used the Pledge as a reference point for what is acceptable under the Establishment Clause; and (3) the Pledge endorses a philosophical idea, not a religious one. Plaintiffs fail to rebut all three.

8

As set forth above, the Pledge does not implicate religion, much less advance it, because it is a philosophical idea, not a religious one. Plaintiffs' case requires this Court to declare that the word "God" is inherently and always religious, something it may not do.

As for the second reason, Schoolchildren pointed out that many Justices have stated that the Pledge does not violate the Establishment Clause, and have in fact used the Pledge as a yardstick for what is acceptable under the Establishment Clause. Schoolchildren Mem. 18-19. Plaintiffs argue that most of these statements are "flimsy dicta" because, they speculate, the Justice writing the opinion was "seeking to maintain a consensus against a dissenter." Opp. at 42, 56. By contrast, they cite "principled dicta" from dissenting opinions that support their position, Opp. at 56-60. Leaving to one side the question of whether dissenting opinions can contain "dicta," it is clear that the Court's statements that the Pledge is constitutional are not dicta in the strict sense—the Pledge has been used as an example that helps the Court determine whether the practice in question complies with the Establishment Clause. That reliance is therefore one of the "portions of the opinion necessary to th[ose] result[s]" and thus binding. *Seminole Tribe* v. *Florida*, 517 U.S. 44, 67 (1996). This Court should therefore not rely on Plaintiffs' speculations about the motives of the Justices to overrule the holdings in those cases. Nor should the Court adopt Plaintiffs' approach to the only Court of Appeals decisions to reach the issue of the Pledge's constitutionality, since they rely on the one reversed decision and reject the two decisions that remain precedent. Opp. at 60-69.

Finally, Plaintiffs' endorsement argument, like their other arguments, hinges on the idea that "God" must be religious. Opp. at 29-30. But the reasonable observer—like the many reasonable Justices to approve of the Pledge—won't share Plaintiffs' aversion, and won't view the use of the words "under God" as a theological claim at all. Schoolchildren Mem. at 19-22.

9

### III. Plaintiffs abandon or fail to support their other claims.

In their opening memorandum, Schoolchildren explained that Plaintiffs fails to state a claim under the Free Exercise Clause, RFRA, state statutes, and vague assertions of parental rights. Schoolchildren Mem. at 22-23. Plaintiffs fail to respond to Schoolchildren's arguments. They concede RFRA does not apply to the School Districts, Opp. at 70, but do not respond to Schoolchildren's showing that they have no standing to bring a RFRA claim against the federal government, and that mere offense at a school curriculum cannot constitute a "substantial burden" under RFRA. Schoolchildren Mem. at 22. Nor do they explain how the Free Exercise is violated when they are able to opt out—the precise relief awarded by the Supreme Court in *Barnette*, which was itself a Free Exercise case. *See Barnette* v. *West Virginia Board of Education*, 47 F.Supp. 251, 254 (S.D.W.Va. 1942) ("must the religious freedom of plaintiffs give way because there is a clear and present danger to the state if these school children do not salute the flag?"). Schoolchildren Mem. at 22-23. Finally, Plaintiffs abandon their claims under state statutes and undefined parental privacy rights. Intervenors demonstrated those claims were nonsensical and unsupported. Schoolchildren Mem. at 23. These claims should be dismissed.[3]

### CONCLUSION

Plaintiffs have failed to state any claim upon which relief can be granted. Schoolchildren therefore respectfully request that their Motion to Dismiss be granted.

---

[3] Plaintiffs' Equal Protection claims fail for the same reason that their First Amendment claims do—the Pledge simply doesn't implicate religion. However, contrary to Federal Defendants' argument, Federal Defendants' Mem. at 37 n.17, religion *is* a suspect class for purposes of Equal Protection analysis. *See City of New Orleans* v. *Dukes*, 427 U.S. 297, 303 (1976) (suspect classifications triggering strict scrutiny include "race, religion [and] alienage").

Dated: March 11, 2008                                 Respectfully submitted,

                                                                  /s/ Eric C. Rassbach

| | |
|---|---|
| Bradford T. Atwood | Kevin J. Hasson (admitted *pro hac vice*) |
| New Hampshire State Bar No. 8512 | Eric C. Rassbach (admitted *pro hac vice*) |
| Clauson Atwood & Spaneas | The Becket Fund for Religious Liberty |
| 10 Buck Road | 1350 Connecticut Ave., NW, Suite 605 |
| Hanover, NH 03755 | Washington, DC 20036 |
| Telephone: (603) 643-2102 | Telephone: (202) 955-0095 |
| Email: batwood@cas-law.net | Email: erassbach@becketfund.org |
| |        khasson@becketfund.org |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2008, I electronically filed the foregoing document with the Clerk of the United States District Court for the District of New Hampshire by using the CM/ECF system. The following parties will be electronically served by the CM/ECF system:

Michael A. Newdow
P.O. Box 233345
Sacramento, CA 95823
Email: newdowlaw@gmail.com

Rosanna T. Fox
O'Brien Law Firm, P.C.
One Sundial Avenue, 5th Floor
Manchester, NH 03103
Email: rosief13@comcast.net

Eric B. Beckenhauer
Theodore C. Hirt
U.S. Department of Justice, Civil Federal Programs
20 Massachusetts Avenue, NW
Washington, DC 20001
Email: eric.beckenhauer@usdoj.gov
         theodore.hirt@usdoj.gov

Gretchen Leah Witt
U.S. Attorney's Office
James C. Cleveland Federal Building
53 Pleasant St., 4th Floor
Concord, NH 03301
Email: gretchen.witt@usdoj.gov

David H. Bradley
Stebbins Bradley Harvey Miller & Brooks PA
41 South Park St., P.O. Box 382
Hanover, NH 03755
Email: dbradley@stebbinsbradley.com


Dated:  March 11, 2008                                    /s/  Eric C. Rassbach            _