UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

The Freedom from Religion Foundation;
Jan Doe and Pat Doe, Parents;
DoeChild-1, DoeChild-2, and DoeChild-3,
Minor Children,
     Plaintiffs

     v.                                Civil No. 07-cv-356-SM
                                          Opinion No. 2008 DNH 141
The Congress of the United States
of America; The United States of
America; The Hanover School District;
The Dresden School District; School
Administrative Unit 70
     Defendants

The State of New Hampshire
     Intervenor

Anna Chobanian; John Chobanian;
Kathryn Chobanian; Schuyler Cyrus;
Elijah Cyrus; Rhys Cyrus; Austin
Cyrus; Daniel Phan; Muriel Cyrus;
Michael Chobanian; Margarethe Chobanian;
Minh Phan; Suzu Phan; and the Knights of
Columbus,
     Intervenors

**O R D E R**

This suit poses a constitutional challenge both to the
inclusion of the words "under God" in the Pledge of Allegiance
("Pledge"), and to the practice of reciting the Pledge in the
elementary school attended by the children of Jan Doe and Pat
Doe.  Before the court are motions to dismiss filed by: (1) the
Congress of the United States of America and the United States of
America ("federal defendants") (document no. 16); (2) the State

of New Hampshire (document no. 14); and (3) a group of defendants that includes eight students in the Hanover School District ("HSD"), parents of five of those students, and the Knights of Columbus (document no. 22).[1]  For the reasons given, the federal defendants' motion is granted in part, and the other motions are denied.

## The Legal Standard

A motion to dismiss for "failure to state a claim upon which relief can be granted," FED. R. CIV. P. 12(b)(6), requires the court to conduct a limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  When considering a motion to dismiss under Rule 12(b)(6), the court "must assume the truth of all well-plead facts and give the plaintiff[s] the benefit of all reasonable inferences therefrom." Alvarado Aguilera v. Negrón, 509 F.3d 50, 52 (1st Cir. 2007) (quoting Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007)).  However, the court need not "credit 'bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like.'" Brown v. Latin Am. Music Co., 498 F.3d 18, 24 (1st Cir. 2007) (quoting

---

[1] The HSD, the Dresden School District, and SAU 70 have not moved to dismiss.

Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)).  "[A]
complaint is properly dismissed for failure to state a claim
'only if the facts lend themselves to no viable theories of
recovery.'"  Garnier v. Rodríguez, 506 F.3d 22, 26 (1st Cir.
2007) (quoting Phoung Luc v. Wyndham Mgmt. Corp., 496 F.3d 85, 88
(1st Cir. 2007)).


## Background

The following facts are drawn from the complaint, and, for
the purposes of deciding the motions to dismiss, are assumed to
be true.  Jan Doe and Pat Doe ("the Doe parents") are the mother
and father of DoeChild-1, DoeChild-2, and DoeChild-3 ("the Doe
children").  The Doe children are enrolled in a public elementary
school operated by the Hanover School District ("HSD").  None of
the three is enrolled in the middle school(s) operated by the
Dresden School District ("DSD") or the high school operated by
School Administrative Unit ("SAU") 70, although the complaint
alleges that they will be at some point in the future.

Jan and Pat Doe describe themselves as atheist and agnostic,
respectively.[2]  Each of the Doe children is said to be either an
atheist or an agnostic.  The Pledge of Allegiance ("Pledge") is

---

[2] Jan and Pat Doe may or may not be members of plaintiff
Freedom From Religion Foundation; the relevant paragraph of the
complaint is ambiguous on that point.  (See Compl. § 9.)

routinely recited in the classrooms of the Doe children, and in the classrooms of schools operated by the DSD and SAU 70.

As adopted by Congress, the Pledge reads:

I pledge allegiance to the Flag of the United States of America, and to the Republic for which it stands, one Nation under God, indivisible, with liberty and justice for all.

4 U.S.C. § 4.  The words "under God" were added to the Pledge by act of Congress in 1954.  See Act of June 14, 1954, Pub. L. No. 83-396, 68 Stat. 249 (hereinafter "1954 Pledge statute").  While 4 U.S.C. § 4 prescribes the text of, and manner in which the Pledge should be recited, it prescribes no penalties, and does not in any way compel recitation of the Pledge.

In New Hampshire, recitation of the Pledge is governed by state law, which provides:

I.  As a continuation of the policy of teaching our country's history to the elementary and secondary pupils of this state, this section shall be known as the New Hampshire School Patriot Act.

II.  A school district shall authorize a period of time during the school day for the recitation of the pledge of allegiance.  Pupil participation in the recitation of the pledge of allegiance shall be voluntary.

III.  Pupils not participating in the recitation of the pledge of allegiance may silently stand or remain seated but shall be required to respect the

4

rights of those pupils electing to participate.  If
this paragraph shall be declared to be unconstitutional
or otherwise invalid, the remaining paragraphs in this
section shall not be affected, and shall continue in
full force and effect.

RSA 194:15-c.


None of the Doe children has been overtly compelled to
recite the Pledge or the words "under God."  The Doe parents
asked the principal of their childrens' school to assure them
that the Pledge would not be recited, but the principal declined
to do so.  This suit followed.


Rather than setting out their legal claims concisely in
discrete counts, plaintiffs have done so in narrative form.  It
is necessary, then, for the court to attempt to identify the
legal grounds upon which plaintiffs are seeking relief.  A fair
reading of the complaint suggests that plaintiffs are asserting
the following causes of action, designated by traditional
"counts."


Count I (Compl. ¶ 37) is a claim by the Doe children that
the HSD violated their rights under the Free Exercise Clause of
the First Amendment to the United States Constitution by
allegedly requiring recitation of the Pledge by other students in
their classrooms.

Count II (Compl. ¶ 37) is a claim by the Doe children that
the HSD burdened their exercise of religion in violation of the
Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. §
2000bb, by allegedly requiring recitation of the Pledge by other
students in their classrooms.

Count III (Compl. ¶ 38) is a claim by the Doe children that
the HSD violated their rights under the First Amendment's
Establishment Clause by officially endorsing monotheism and,
thus, stigmatizing them for their atheistic or agnostic beliefs.

Count IV (Compl. ¶ 39) is a claim by the Doe children that
the HSD, the DSD, and SAU 70, breached their respective
constitutional obligations under Part I, Article 6, of the New
Hampshire Constitution by officially endorsing monotheism.[3]

Count V (Compl. ¶¶ 42-43) is a claim by the Doe parents that
the HSD abridged their parental rights to instill their own
religious beliefs in their children.

_____

[3] In a footnote in their complaint, plaintiffs state: "To
preclude unnecessary repetition, Article 6 (Morality and Piety)
of the New Hampshire Constitution will not be mentioned further.
However, Plaintiffs assert that each of the relevant claims made
pursuant to the federal constitutional provisions likewise apply
to the State Constitution."  (Compl. ¶ 39.)  That is not enough,
see FED. R. CIV. P. 8(a)(2), and plaintiffs' claims are limited to
those they state expressly.

Count VI (Compl. ¶¶ 44-45) is a claim by the Doe children that the HSD abridged their rights to acquire religious values from their parents, without governmental interference.

Count VII (Compl. ¶¶ 46-50) is a claim by the Doe children that the HSD violated their rights under the Equal Protection Clauses of the Fifth and Fourteenth Amendments to the United States Constitution by endorsing the religious notion that God exists, and perpetuating prejudice against atheists or agnostics, such as themselves.

Count VIII (Compl. ¶ 51) is a claim by the Doe children that the HSD subjected them to neglect (if not abuse) within the meaning of 42 U.S.C. § 5106g(2) by exposing them to emotional harm occasioned by their required presence in a classroom in which other students recite the Pledge.

Count IX (Compl. ¶¶ 52-63) is a claim by the Doe parents that employees of the HSD, the DSD, SAU 70, and the United States of America (including members of Congress), violated their rights as taxpayers under the First Amendment's Establishment Clause by reciting the Pledge, participating in government functions during which the Pledge is recited, and printing and distributing

written materials (including the United States Code) that include the Pledge.

Count X (Compl. ¶ 64) is plaintiffs' claim that the United States Congress violated the First Amendment's Establishment Clause when it passed the 1954 Pledge statute.

Count XI (Compl. ¶ 65–66) is plaintiffs' claim that the 1954 Pledge statute is invalid under RFRA.

Count XII (Compl. ¶ 67) is plaintiffs' claim that the HSD, the DSD, and SAU 70, violated the First Amendment's Establishment clause by implementing RSA 194:15–c, requiring teachers in their schools to lead recitations of the Pledge as a patriotic exercise.

Count XIII (Compl. ¶ 67) is plaintiffs' claim that the HSD, the DSD, and SAU 70, violated the First Amendment's Free Exercise clause by implementing RSA 194:15–c, requiring recitation of the Pledge in its schools as a patriotic exercise.

Count XIV (Compl. ¶ 67) is plaintiffs' claim that the HSD, the DSD, and SAU 70, violated Part I, Article 6, of the New

Hampshire Constitution by implementing RSA 194:15-c, requiring recitation of the Pledge in its schools as a patriotic exercise.

Count XV (Compl. ¶ 68) is a claim by the Doe children that the HSD violated RSA 169-D:23 by denying them the right to freely exercise their religion.

Count XVI (Compl. ¶ 71) is plaintiffs' claim that the 1954 Pledge statute is void as against public policy because, rather than engendering patriotism and national unity, including the words "under God" in the text of the Pledge actually fosters divisiveness.

In their prayers for relief, plaintiffs ask the court to: (1) declare that Congress violated the First Amendment's Establishment and Free Exercise Clauses when it passed the 1954 Pledge statute; (2) declare that 4 U.S.C. § 4 violates the First Amendment's Establishment and Free Exercise Clauses, the Equal Protection guarantee of the Fifth Amendment, and RFRA, by virtue of its including the words "under God" in the text of the Pledge; (3) declare that by having their agents lead students in reciting the Pledge, the HSD, the DSD, and SAU 70, violated the First Amendment's Establishment and Free Exercise Clauses; the Fourteenth Amendment's Equal Protection Clause; RFRA; Part I,

9

Article 6, of the New Hampshire Constitution; RSA 169-D:23, and RSA 194:15-c;[4] (4) order Congress to immediately remove the words "under God" from the Pledge; (5) order the United States to use its power to remove the words "under God" from 4 U.S.C. § 4; and (6) order the HSD, the DSD, and SAU 70, to cease and desist from using the Pledge in the schools they operate.

Plaintiffs originally sued the Congress of the United States of America ("Congress"), the United States of America ("the United States"), the HSD, the DSD, and SAU 70.  Subsequently, the court granted motions to intervene filed by: (1) the United States, seeking to defend the constitutionality of 4 U.S.C. § 4; (2) the State of New Hampshire, seeking to defend the constitutionality of RSA 194:15-c; and (3) eight HSD students (and the parents of five), and the Knights of Columbus, all seeking "to protect their substantial interest in defending, against Plaintiffs' constitutional challenge, the constitutionality of the Pledge of Allegiance that is recited daily in Hanover's public schools" (Mot. to Intervene (document no. 21) at 1).

---

[4] The claim that the HSD, the DSD and SAU 70 violated RSA 194:15-c, New Hampshire's pledge statute, does not square with the body of plaintiffs' complaint, in which they contend that RSA 194:15-c itself violates the federal constitution, and that various defendants violated their federal constitutional rights not by ignoring RSA 194:15-c, but by complying with its mandate.

**Discussion**

A. The Federal Defendants' Motion to Dismiss

As noted above, plaintiffs bring three claims against the federal defendants, asserting that: (1) Congress violated the Establishment Clause by passing the 1954 Pledge statute (Count X); (2) Congress violated (the later-enacted) RFRA when it passed the 1954 Pledge statute (Count XI); and (3) members of Congress, along with employees of the United States, have violated the Establishment Clause by reciting the Pledge as constituted in 1954, participating in events at which the Pledge was recited, and printing and distributing written materials that include the Pledge (Count IX).

The federal defendants move to dismiss on a variety of grounds both jurisdictional and substantive.  The court begins with the jurisdictional issues.

First, Counts X and XI, which assert claims against the United States Congress, plainly must be dismissed for lack of jurisdiction.  Article I, Section 6, Clause 1, of the national constitution provides that "for any Speech or Debate in either House [of Congress], [members] shall not be questioned in any other Place."  Thus, "the federal courts lack jurisdiction to issue orders directing Congress to enact or amend legislation."

<u>Newdow v. U.S. Congress</u>, 328 F.3d 466, 484 (9th Cir. 2002), <u>rev'd</u>
<u>on other grounds by</u> <u>Elk Grove Unified Sch. Dist. v. Newdow</u>, 542
U.S. 1 (2004) (citing <u>Eastland v. U.S. Servicemen's Fund</u>, 421
U.S. 491, 503 (1975)).  "Because the words that amended the
Pledge were enacted into law by statute, the district court may
not direct Congress to delete those words," <u>id.</u>, and Congress may
not be "questioned [about them] in any other Place," <u>id.</u>, as a
defendant in a lawsuit or otherwise.  Accordingly, Counts X and
XI are dismissed for want of subject matter jurisdiction.

Count IX is dismissed as well, to the extent it seeks relief
against the United States of America, because the Doe parents are
without standing to bring the claim asserted against the United
States.

The U.S. Supreme Court has recently reiterated the
principles governing standing to sue for alleged violations of
the Establishment Clause:

> Article III of the Constitution limits the
> judicial power of the United States to the resolution
> of "Cases" and "Controversies," and "'Article III
> standing . . . enforces the Constitution's case-or-
> controversy requirement.'"  <u>DaimlerChrysler Corp. v.</u>
> <u>Cuno</u>, 547 U.S. ----, ----, 126 S. Ct. 1854, 1861 (2006)
> (quoting <u>Elk Grove Unified School Dist. v. Newdow</u>, 542
> U.S. 1, 11 (2004)). . . .
>
> "[O]ne of the controlling elements in the
> definition of a case or controversy under Article III"

is standing.  <u>ASARCO Inc. v. Kadish</u>, 490 U.S. 605, 613
(1989) (opinion of KENNEDY, J.).  The requisite
elements of Article III standing are well established:
"A plaintiff must allege personal injury fairly
traceable to the defendant's allegedly unlawful conduct
and likely to be redressed by the requested relief."
<u>Allen v. Wright</u>, 468 U.S. 737, 751 (1984).

<u>Hein v. Freedom From Religion Found., Inc.</u>, 127 S. Ct. 2553, 2562

(2007) (parallel citations omitted) (holding that taxpayers

lacked standing to assert Establishment Clause challenge to

religious activities of White House Office of Faith-Based and

Community Initiatives).


In Count IX the Doe parents allege injury in that some

portion of their federal taxes are used to support recitation of

the Pledge by federal employees, participation by federal

employees in government functions at which the Pledge is recited,

and the printing and distribution of various written materials

that include the Pledge.  Regarding taxpayer standing, the

Supreme Court explained:

> As a general matter, the interest of a federal
> taxpayer in seeing that Treasury funds are spent in
> accordance with the Constitution does not give rise to
> the kind of redressable "personal injury" required for
> Article III standing. . . .

> We have consistently held that this type of
> interest is too generalized and attenuated to support
> Article III standing. . . .

> Because the interests of the taxpayer are, in
> essence, the interests of the public-at-large, deciding

13

a constitutional claim based solely on taxpayer
standing "would be[,] not to decide a judicial
controversy, but to assume a position of authority over
the governmental acts of another and co-equal
department, an authority which plainly we do not
possess."  [Frothingham v. Mellon], [262 U.S.] at 489;
see also Alabama Power Co. v. Ickes, 302 U.S. 464, 478-
479 (1938).

    In Doremus v. Board of Ed. of Hawthorne, 342 U.S.
429, 433 (1952), we reaffirmed this principle,
explaining that "the interests of a taxpayer in the
moneys of the federal treasury are too indeterminable,
remote, uncertain and indirect to furnish a basis for
an appeal to the preventive powers of the Court over
their manner of expenditure."  We therefore rejected a
state taxpayer's claim of standing to challenge a state
law authorizing public school teachers to read from the
Bible because "the grievance which [the plaintiff]
sought to litigate . . . is not a direct dollars-and-
cents injury but is a religious difference."  Id., at
434.  In so doing, we gave effect to the basic
constitutional principle that

> "a plaintiff raising only a generally available
> grievance about government-claiming only harm to
> his and every citizen's interest in proper
> application of the Constitution and laws, and
> seeking relief that no more directly and tangibly
> benefits him than it does the public at large-does
> not state an Article III case or controversy."

Lujan v. Defenders of Wildlife, 504 U.S. 555, 573-574
(1992).

Hein, 127 S. Ct. at 2563-64 (parallel citations omitted).


    In Valley Forge Christian College v. Americans United for

Separation of Church & State, Inc., the Supreme Court also

rejected a determination by the court of appeals that plaintiffs

in an Establishment Clause case "had established standing by

virtue of an injury in fact to their shared individuated right to a government that shall make no law respecting the establishment of religion." 454 U.S. at 482 (holding that taxpayers lacked standing to assert an Establishment Clause challenge to the donation of surplus government property to a sectarian college). In the words of the Court:

> This Court repeatedly has rejected claims of standing predicated on "'the right, possessed by every citizen, to require that the Government be administered according to law . . . .' Fairchild v. Hughes, 258 U.S. 126, 129 [1922]." Baker v. Carr, 369 U.S. 186, 208 (1962). See Schlesinger v. Reservists Committee to Stop the War, supra, 418 U.S. [208,] 216-222 [(1974)]; Laird v. Tatum, 408 U.S. 1 (1972); Ex parte Levitt, 302 U.S. 633 (1937). Such claims amount to little more than attempts "to employ a federal court as a forum in which to air . . . generalized grievances about the conduct of government." Flast v. Cohen, 392 U.S. [83], 106 [(1968)].
>
> . . . .
>
> [A]ssertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Art. III without draining those requirements of meaning.
>
> . . . .
>
> The complaint in this case shares a common deficiency with those in Schlesinger and [United States v.] Richardson[, 418 U.S. 166 (1974)]. Although respondents claim that the Constitution has been violated, they claim nothing else. They fail to identify any personal injury suffered by them as a consequence of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees. That is not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased

> in constitutional terms.  It is evident that
> respondents are firmly committed to the constitutional
> principle of separation of church and State, but
> standing is not measured by the intensity of the
> litigant's interest or the fervor of his advocacy.

Valley Forge, 454 U.S. at 482–86 (parallel citations omitted).

The general principles outlined in Hein and Valley Forge are subject to an exception, announced in Flast v. Cohen.  In that case, the Supreme Court "noted that the Establishment Clause of the First Amendment specifically limits the taxing and spending power conferred by Art. I, § 8," 392 U.S. at 105, and held that

> a taxpayer will have standing consistent with Article
> III to invoke federal judicial power when he alleges
> that congressional action under the taxing and spending
> clause is in derogation of those constitutional
> provisions which operate to restrict the exercise of
> the taxing and spending power.

Id. at 105–06.  As the Court further explained:

> [A] taxpayer will be a proper party to allege the
> unconstitutionality only of exercises of congressional
> power under the taxing and spending clause of Art. I, s
> 8, of the Constitution.  It will not be sufficient to
> allege an incidental expenditure of tax funds in the
> administration of an essentially regulatory statute.
> This requirement is consistent with the limitation
> imposed upon state–taxpayer standing in federal courts
> in Doremus v. Board of Education, 342 U.S. 429 (1952).

Flast, 392 U.S. at 102 (parallel citations omitted, emphasis added).

16

Here, the Doe parents allege that: (1) they pay federal income and sales taxes (Compl. ¶ 52); (2) "[s]ome of the federal tax dollars paid by [them] and utilized in connection with Defendants' maintenance and utilization of the Pledge of Allegiance are apportioned under the taxing and spending clause of Article I, Section 8 of the Constitution of the United States" (¶ 53); (3) "numerous federal . . . governmental employees – using governmental facilities – recite the now-sectarian Pledge of Allegiance while being paid from the government coffers" (¶ 56); (4) "tax moneys are also used to perpetuate the notion that 'real Americans' believe in God, and those who do not believe in God are second-class citizens, to be 'tolerated' by our society" (¶ 58); (5) "[f]ederal tax money is also used for the printing and distribution of the United States Code (including 4 U.S.C. § 4) as well as pamphlets, etc., that contain the Pledge of Allegiance" (¶ 60); (6) "[f]ederal . . . tax moneys are used when the Pledge is recited at federal . . . governmental functions" (¶ 61); and (7) "[f]ederal tax money is also used to support the 'Pause for the Pledge of Allegiance' (Pub. L. 99 Stat. 97) annual festivities" (¶ 62).[5]

---

[5] Plaintiffs describe the "Pause for the Pledge of Allegiance" in the following way:

> Sponsored by the National Flag Day Foundation, this event involves the participation of thousands of Maryland school children, a high school choir, use of governmental buildings, a concert given by the 229th

Under even the most generous reading of plaintiffs'
complaint, it simply does not contain allegations sufficient to
bring the Doe parents' claims within the <u>Flast</u> exception.  <u>See</u>
<u>Flast</u>, 392 U.S. at 85-86 (holding that taxpayers had standing to
assert Establishment Clause challenge to federal statute
appropriating funds "used to finance instruction . . . in
religious schools, and to purchase textbooks and other
instructional materials for use in such schools"); <u>Hein</u>, 127 S.
Ct. at 2569-70 (declining to extend <u>Flast</u> exception to executive
branch expenditures); <u>Valley Forge</u>, 454 U.S. at 479-80 (same).
While generally alleging that some federal funds appropriated
under the Article I Taxing and Spending Clause support recitation
or publication of the Pledge, plaintiffs identify only a single
congressional action, a joint resolution "urg[ing] all Americans
to participate on [National Flag Day] by reciting in unison the
Pledge of Allegiance to our Nation's Flag, at seven o'clock post
meridian eastern daylight time on June 14, 1985."  Act of June
20, 1985, Pub. L. No. 99-54, 99 Stat. 97.  That Act, however, was
not an exercise of Congress's taxing and spending power; it
appropriated no funds at all.  Because the sole congressional

_____

Maryland Army National Guard band, and a "Fly-over" by
the A-10 "Thunderbolt" jets of the 104th Fighter
Squadron 175th Wing Maryland Air National Guard.  The
estimated cost to taxpayers of the Fly-over, alone, is
on the order of $10,000.00.

(Compl. ¶64, n.7).

18

action upon which the Doe parents rely in Count IX was not an exercise of Congress's taxing and spending power, their claim does not fall within the <u>Flast</u> exception.

Because the Doe parents lack standing to bring the claim asserted against the federal defendants in Count IX, this court lacks jurisdiction to adjudicate it.  <u>See</u> <u>United Seniors Ass'n, Inc. v. Philip Morris USA</u>, 500 F.3d 19, 26 (1st Cir. 2007) ("As we conclude that United Seniors failed to establish Article III standing . . . we lack the requisite subject matter jurisdiction to reach the district court's determination on the merits.") (citing <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 94–95 (1998)).  Accordingly, Count IX is dismissed as to the federal defendants.

Notwithstanding the dismissal of all claims against the federal defendants, however, the United States remains a party to this case, in its limited role as an intervenor.  The Rule of Civil Procedure governing intervention provides, in part, that "the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute."  FED. R. CIV. P. 24(A)(1).  The United States may intervene by right under 28 U.S.C. § 2403(a), which provides, in pertinent part:

> In any action, suit or proceeding in a court of
> the United States . . . wherein the constitutionality
> of any Act of Congress affecting the public interest is
> drawn in question, the court . . . shall permit the
> United States to intervene <u>for presentation of</u>
> <u>evidence, if evidence is otherwise admissible in the</u>
> <u>case, and for argument on the question of</u>
> <u>constitutionality</u>.  The United States shall, subject to
> the applicable provisions of law, have all the rights
> of a party . . . <u>to the extent necessary for a proper</u>
> <u>presentation of the facts and law relating to the</u>
> <u>question of constitutionality</u>.

(Emphasis added.)  "The scope of this statutory intervention is limited to presenting evidence and arguments in support of the constitutionality of the [challenged] statute." <u>Vietnamese Fishermen's Ass'n v. Knights of the Ku Klux Klan</u>, 543 F. Supp. 198, 215 n.17 (S.D. Tex. 1982) (citing <u>Smolowe v. Delendo Corp.</u>, 36 F. Supp. 790, 792 (S.D.N.Y. 1940)).

Given the limited role of the United States as an intervenor, it is not appropriate to reach the United States' arguments concerning: (1) plaintiffs' standing to sue the DSD or SAU 70; or (2) FFRF's associational standing to sue any of the defendants in this case.  On the other hand, if and when the HSD, the DSD, and SAU 70, engage on the merits, the United States will be heard on the constitutionality of 4 U.S.C. § 4, but only on that issue.

B. The State of New Hampshire's Motion to Dismiss

The State of New Hampshire's status is similar to that of the United States — it is an intervenor for the limited purpose of presenting evidence and providing argument related to the constitutionality of RSA 194:15-c.  See FED. R. CIV. P. 24(a)(1); 28 U.S.C. § 2403(b); Vietnamese Fishermen's Ass'n, 543 F. Supp. 198, 215 n.17.  Like the United States, the State of New Hampshire will be heard at the appropriate time on the statute's constitutionality.  But, consistent with 28 U.S.C. § 2403(b), the State of New Hampshire will not be heard on any of the other issues raised in its motion to dismiss, such as: (1) this court's jurisdiction to decide state-law questions; and (2) plaintiffs' standing to assert that RSA 194:15-c violates the federal constitution.  Accordingly, the State of New Hampshire's motion to dismiss is denied, but with the understanding that argument presented in that motion relating to the constitutionality of RSA 194:15-c will be taken into account at such time as that issue is joined by the remaining parties in interest.


C. The Third Motion to Dismiss

A third motion to dismiss has been filed by several HSD students, their parents, and the Knights of Columbus.  As noted above, these parties "request[ed] leave to intervene . . . to protect their substantial interest in defending . . . the

21

constitutionality of the Pledge of Allegiance that is recited daily in Hanover's public schools."  As with the motions to dismiss filed by the other intervenors, to the extent the motion raises other issues, such as standing, it is denied.  But, to the extent the motion addresses the constitutionality issue, the intervenors' argument will be taken into account at such time as that issue is joined by the remaining parties in interest.

## Conclusion

For the reasons given, the federal defendants' motion to dismiss (document no. 16) is granted to the extent that the federal defendants are dismissed from the case as parties in interest, but the motion is otherwise denied.  The remaining two motions to dismiss (document nos. 14 and 22) are denied to the extent they address issues other than the constitutionality of the Pledge, related practices and state statutory provisions.  As the case progresses, and the parties in interest engage on the constitutionality of the Pledge and related practices, those portions of the three motions to dismiss addressing that issue will be accepted as memoranda of law in support of the argument for constitutionality.  Accordingly, the intervenors need do nothing more to be heard on the issue of constitutionality, but, of course, are free to file supplemental memoranda as appropriate.

**SO ORDERED.**

Steven J. McAuliffe
Chief Judge

August 7, 2008

cc:  Michael A. Newdow, Esq.
     Rosanna T. Fox, Esq.
     Eric B. Beckenhauer, Esq.
     Gretchen L. Witt, Esq.
     Theodore C. Hirt, Esq.
     David H. Bradley, Esq.
     Nancy J. Smith, Esq.
     Eric C. Rassbach, Esq.
     Kevin J. Hasson, Esq.
     Bradford T. Atwood, Esq.
     John A. Simmons, Sr., Esq.
     Benjamin W. Bull, Esq.
     David A. Cortman, Esq.
     Jeremy D. Tedesco, Esq.
     Michael J. Compitello, Esq.