Michael Newdow, *pro hac vice*
PO Box 233345
Sacramento, CA  95823
(916) 427-6669

Rosanna T. Fox, NH SBN: 17693
12 Eldorado Circle
Nashua, NH  03062
(603) 318-8479

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

### Civil Action No. 07-cv-356-SM

THE FREEDOM FROM RELIGION FOUNDATION;
JAN DOE AND PAT DOE, PARENTS; DOECHILD-1, DOECHILD-2 and
DOECHILD-3, MINOR CHILDREN;

                                    Plaintiffs,

v.

THE HANOVER SCHOOL DISTRICT ("HSD");
THE DRESDEN SCHOOL DISTRICT ("DSD");

                                    Defendants.

## FIRST AMENDED COMPLAINT

Plaintiffs allege as follows:

# TABLE OF CONTENTS

JURISDICTION AND VENUE...........................................................................1

PARTIES ...............................................................................................................1

RELEVANT LAW ................................................................................................3

  A. CONSTITUTIONAL PROVISIONS..................................................3

  B. STATUTES............................................................................................4

RELEVANT HISTORY .......................................................................................5

CLAIM FOR RELIEF .........................................................................................9

  A. FEDERAL COUNTS...........................................................................11

      COUNT I ........................................................................................11
      COUNT II........................................................................................12
      COUNT III ......................................................................................13
      COUNT IV ......................................................................................13
      COUNT V ........................................................................................14

  B. STATE COUNTS.................................................................................15

      COUNT VI ......................................................................................15
      COUNT VII......................................................................................16
      COUNT VIII ....................................................................................16
      COUNT IX ......................................................................................16

PRAYER FOR RELIEF........................................................................................18

1 <u>**JURISDICTION AND VENUE**</u>

2  1.  This is a civil action claiming (among others) violations of the First, Fifth and

3      Fourteenth Amendments of the Constitution of the United States of America.

4      As such, this Court has jurisdiction under 28 U.S.C. § 1331.

5  2.  This action alleges that Defendants Hanover School District ("HSD") and

6      Dresden School District ("DSD") have deprived and/or will deprive Plaintiffs of

7      rights secured by the First, Fifth and Fourteenth Amendments to the

8      Constitution of the United States of America. As such, this Court has

9      jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343(a)(3).

10 3.  A substantial part of the events or omissions giving rise to this claim occurred,

11     occur or will occur in the District of New Hampshire.  Venue is therefore proper

12     under 28 U.S.C. § 1391(b)(2).

13 4.  Defendants HSD and DSD reside in New Hampshire.  Venue is therefore proper

14     under 28 U.S.C. § 1391(b)(1) and (3).

15

16 <u>**PARTIES**</u>

17 5.  Plaintiff Freedom From Religion Foundation (FFRF) is a national association

18     of freethinkers (atheists and agnostics), established as a 501(c)(3) educational

19     group in 1978, which works to protect its members by keeping church and state

20     separate. The Foundation, based in Madison, Wisconsin, has members in every

1    state, including New Hampshire. Current total membership is approximately

2    12,600, of which approximately 60 are from New Hampshire. Members of

3    FFRF live in, pay taxes in, and have children (or are children) who attend

4    public schools in this judicial district.

5    6.   Plaintiffs Jan Doe and Pat Doe are members of FFRF. They are residents and

6    citizens of the United States, of the State of New Hampshire and of Hanover,

7    New Hampshire. They own property situated in Hanover, New Hampshire.

8    Accordingly, they pay taxes that are used to fund HSD and DSD and their

9    schools. They are the parents of DoeChild-1, DoeChild-2 and DoeChild-3, with

10    full legal custody of those children.

11    7.   Plaintiffs DoeChild-1, DoeChild-2 and DoeChild-3 are residents and citizens of

12    the United States, of the State of New Hampshire, and of Hanover, New

13    Hampshire. They are all siblings and they are all children of Jan and Pat Doe.

14    8.   All three of the DoeChildren are currently enrolled in elementary school within

15    HSD.

16    9.   As a sixth grader, DoeChild-1 currently attends a middle school which is

17    jointly administered by HSD and DSD. DoeChild-1 will begin seventh grade –

18    solely under the control of DSD – beginning at the end of the coming summer

19    (2009).

2

1   10. DoeChild-2 and DoeChild-3 will eventually attend one or more of DSD's

2        schools as well.

3   11. Defendant the Hanover School District ("HSD") is the governing body

4        responsible for operating, controlling and supervising free public elementary

5        schools in Hanover, New Hampshire.

6   12. Defendants Dresden School District ("DSD") is the governing body responsible

7        for operating, controlling and supervising free public middle and high schools

8        in Hanover, New Hampshire.

9

10

11                              **RELEVANT LAW**

12   **A. CONSTITUTIONAL PROVISIONS**

13   13. The Fourteenth Amendment to the Constitution of the United States of America

14        states, in pertinent part, that:

15                    No State shall make or enforce any law which shall
16                    abridge the privileges or immunities of citizens of the
17                    United States; nor shall any State deprive any person of
18                    life, liberty, or property, without due process of law; nor
19                    deny to any person within its jurisdiction the equal
20                    protection of the laws.
21
22   14. The First Amendment to the Constitution of the United States of America

23        states, in pertinent part, that "Congress shall make no law respecting an

24        establishment of religion or prohibiting the free exercise thereof. …" By way of

                                                                                    **3**

the aforementioned Fourteenth Amendment, the States are subject to these

Religion Clauses. <u>Cantwell v. Connecticut</u>, 310 U.S. 296, 303-304 (1940).

15. Article 6 (Morality and Piety) of the New Hampshire Constitution provides, in

pertinent part:

> [N]o person shall ever be compelled to pay towards the support of the schools of any sect or denomination. And every person, denomination or sect shall be equally under the protection of the law; and no subordination of any one sect, denomination or persuasion to another shall ever be established.

**B. STATUTES**

16. Pursuant to 4 U.S.C. § 4, the Pledge of Allegiance to the Flag of the United

States of America reads:

> I pledge allegiance to the flag of the United States of America, and to the Republic for which it stands, one Nation under God, indivisible, with liberty and justice for all.

17. RSA § 194:15-c (New Hampshire School Patriot Act) states:

> I.  As a continuation of the policy of teaching our country's history to the elementary and secondary pupils of this state, this section shall be known as the New Hampshire School Patriot Act.
> II. A school district shall authorize a period of time during the school day for the recitation of the pledge of allegiance. Pupil participation in the recitation of the pledge of allegiance shall be voluntary.
> III. Pupils not participating in the recitation of the pledge of allegiance may silently stand or remain seated but shall be required to respect the rights of those pupils

**4**

1    electing to participate. If this paragraph shall be
2    declared to be unconstitutional or otherwise invalid,
3    the remaining paragraphs in this section shall not be
4    affected, and shall continue in full force and effect.
5
6    18. RSA § 169-D:23 (Religious Preference) states (in pertinent part):

7    No child under the supervision of any state institution
8    shall be denied the free exercise of his religion or that of
9    his parents.
10
11

## **RELEVANT HISTORY**

12

13    19. In preparation for the 400th anniversary of Columbus's arrival in the New

14    World, *The Youth's Companion* – a children's magazine based in Boston –

15    published on September 8, 1892 the following short recitation:

16    I pledge allegiance to my Flag and to the Republic for which it stands: one
17    Nation indivisible, with Liberty and Justice for all.
18

19    20. With the support of President Benjamin Harrison, schools throughout the

20    nation were encouraged to use that "pledge" that year as part of their

21    Columbus Day festivities.

22    21. Subsequently, the nation's schools adopted this pledge to be recited daily by

23    the students, led by their teachers.

24    22. As increasing numbers of immigrants flowed into the country, "my Flag"

25    became somewhat ambiguous. Thus, in 1923, those two words were replaced

**5**

1     by "the flag of the United States."  The phrase "of America" was appended a

2     year later.

3  23. In 1942, Congress sent a joint resolution regarding an official Code of Flag

4     Etiquette to President Franklin D. Roosevelt. The president approved the

5     resolution and Pub. L. No. 622, 56 Stat. 380 took effect on June 22 of that year.

6  24. Section (7) of Pub. L. No. 622, 56 Stat. 380 contained the Pledge of Allegiance

7     to the Flag of the United States of America (hereinafter "the Pledge"). It read:

8        I pledge allegiance to the flag of the United States of America and to the
9        Republic for which it stands, one Nation indivisible, with liberty and justice
10       for all.
11

12 25. It is to be noted that there is and was nothing religious in the 1942 version of

13    the Pledge.

14 26. In 1954, Congress promulgated its Act of June 14, 1954, Pub. L. No. 396, 68

15    Stat. 249 (hereafter "Act of 1954").  The sole legislative purpose of that Act –

16    as stated by Congress, itself – was to spatchcock the two words "under God"

17    into the previously secular Pledge.[1] As codified in 4 U.S.C. § 4, the Pledge of

18    Allegiance to the Flag of the United States of America now reads:

---

[1] "Section 7 of [the Act of June 22, 1942] contains the pledge of allegiance to the flag; and it is the purpose of this proposed legislation to amend that pledge by adding the words 'under God' so as to make it read, in appropriate part, 'one Nation under God, indivisible,'." H.R. 1693, 83rd Cong., 2d Sess., reprinted in 1954 U.S. Code Cong. & Ad. News, vol. 2: 2339, 2340.

1     I pledge allegiance to the flag of the United States of America, and to the
2     Republic for which it stands, one Nation under God, indivisible, with liberty
3     and justice for all.

4

5    27. The text of the phrase that the Act of 1954 intruded into the Pledge of

6    Allegiance is "under God." This is patently, facially, unquestionably and

7    clearly religious text.

8    28. The legislative history demonstrates that the Act of 1954 was passed for the

9    purposes of endorsing (Christian) Monotheism and disapproving of Atheism.

10   As the Report accompanying the legislation clearly enunciated:

11          The inclusion of God in the Pledge, therefore, would
12          further acknowledge the dependence of our people and
13          our Government upon the moral directions of the
14          Creator.[2]

15

16   29. Not only was Congress intent upon espousing the value of Monotheism, but it

17   simultaneously had in mind the denigration of Atheism, as it wrote that "[t]he

18   inclusion of God in the Pledge" also "would serve to deny the atheistic and

19   materialistic concepts of communism."[3]

20   30. The history also reveals that our representatives specifically intended for the

21   new religious verbiage to be recited by public school children in the public

22   schools. As President Eisenhower noted as he signed the Act of 1954 into law:

---

[2] H.R. 1693, 83rd Cong., 2d Sess., at 2. It might be emphasized that "**the C**reator,"
not "a creator," was written. This demonstrates that it was the (Judeo-) Christian
Creator to which Congress was referring.
[3] Id.

1        From this day forward the millions of our schoolchildren
2        will daily proclaim in every city and town, every village
3        and rural schoolhouse the dedication of our Nation and
4        our people to the Almighty.
5
6   31. That the purpose of the Act of 1954 was purely religious can also be noted by

7      its association with religion in the minds of the legislators. Rep. Oliver Bolton

8      of Ohio (who sponsored one of the eighteen versions of the Bill) called the

9      White House regarding a picture taking during that year's Flag Day ceremony.

10     He recommended "that a Protestant, a Catholic and a Jew be in the group."[4]

11   32. Similarly, Rep. Peter Rodino of New Jersey asked his colleagues in the House

12     to "join together, Protestant, Jew, and Catholic, in taking this action."[5]

13   33. At the Flag Day ceremony itself (carried live on CBS's morning news show[6]),

14     *Onward Christian Soldiers* was played.[7] The lyrics to that song are:

15
16        Onward, Christian soldiers, marching as to war,
17        With the cross of Jesus going on before.
18        Christ, the royal Master, leads against the foe;
19        Forward into battle see His banners go!
20

---

[4] Dwight D. Eisenhower President Library, Reports to the President on Pending Legislation prepared by the White House Records Office (Bill File) June 14, 1954 – June 18, 1954, Box No. 22.

[5] Silk M. *Spiritual Politics: Religion and America since World War II*. (New York; Simon and Schuster, 1988) p. 100.

[6] Carter, Paul A. *Another Part of the Fifties*. (New York, Columbia University Press, 1983), p. 116.

[7] 100 Cong. Rec. 7, 8617-8618 (June 22, 1954) (Statement of Sen. Homer Ferguson).

**8**

34. As the foregoing demonstrates, Congress's actions with regard to the Act of 1954 unquestionably violated the Supreme Court's Establishment Clause tests.[8]

35. Additionally, Atheistic (and other non-Monotheistic) Americans have had their religious free exercise rights abridged, since they cannot attend government meetings, attend public schools or participate in other activities without being given the message that their religious beliefs are wrong.

## **CLAIM FOR RELIEF**

36. Plaintiff FFRF represents its members, including the Doe Plaintiffs, as well as others who may suffer the same or similar injuries that the Doe Plaintiffs endure (as listed in the following paragraphs).

37. Plaintiff Jan Doe is an Atheist, who denies the existence of a God.

38. Plaintiff Pat Does is agnostic, who doubts the existence of a God.

39. Plaintiffs Jan and Pat Doe are the parents of Plaintiffs DoeChild-1, DoeChild-2 and Doe-Child-3.

---

[8] See, e.g., Lemon v. Kurtzman, 403 U.S. 602 (1971); Lynch v. Donnelly, 465 U.S. 668, 688 (1984) (O'Connor, J., concurring).

40. Plaintiff DoeChild-1 attends a public middle school jointly administered by HSD and DSD. Plaintiffs, DoeChild-2 and DoeChild-3 are students at a public elementary school administered solely by Defendant HSD.

41. Plaintiffs DoeChild-1, DoeChild-2 and DoeChild-3 are all Atheists or agnostics, who specifically deny/doubt the existence of God.

42. Pursuant to RSA § 194:15-c (New Hampshire School Patriot Act), Defendants HSD and DSD have their teachers and/or other government agents lead their public school students in reciting the Pledge of Allegiance during school hours.

43. DoeChild-1, DoeChild-2 and DoeChild-3 have all been led by their public school teachers in recitations of the Pledge of Allegiance. Thus, the DoeChildren have all repeatedly been forced by Defendant HSD's agents to confront the government's purely religious claim that this is "one Nation under God."

44. This harm is especially onerous because it is part of a request to participate in a patriotic ritual. Thus, should any Plaintiff choose not to participate, his or her patriotism is immediately called into question in front of neighbors and peers.

45. On top of all this is the fact that the procedure involves standing, facing the Flag of the United States of America, and placing one's hand over one's heart.

**10**

46. Plaintiffs Jan and Pat Doe have written to the principal of their children's school, asking for assurance that the Pledge will no longer be recited in their children's classes. The principal has not provided that assurance.

47. After completing elementary school in HSD, Plaintiffs DoeChild-2 and Doe-Child-3 will attend public schools run by DSD. (Plaintiff DoeChild-1 currently attends a middle school run jointly by HSD and DSD.)

48. Again, the Pledge of Allegiance, as codified in 4 U.S.C. § 4 (and as recited by the students in HSD and DSD), makes the purely religious claim that the United States is "one Nation under God." Plaintiffs, generally, deny that God exists, and maintain that their constitutional and statutory rights are abridged when the school district Defendants lead them in making this purely religious, Monotheistic claim.

**A. FEDERAL COUNTS**

**<u>COUNT I</u>**

49. The introductory allegations set forth in paragraphs 1-48 are realleged herein.

50. The government-led recitations of the Pledge of Allegiance are not religiously neutral, and have religious effects, endorsing the purely religious notion that there exists a God.

1   51. The recitations also cause Plaintiffs to all suffer the specific harm that the

2   Establishment Clause seeks to prevent – i.e., degradation from the equal rank

3   of citizens on account of their religious beliefs.[9] In other words, as a result of

4   the Defendants' endorsement of Monotheism, Plaintiffs have suffered the

5   stigmatic injury of being turned into "outsiders, not full members of the

6   political community." <u>Lynch v. Donnelly</u>, 465 U.S. 668, 688 (1984)

7   (O'Connor, J., concurring).

8   52. Additionally, in the setting of the public schools, the impressionable young

9   DoeChildren are coerced into joining in the recitation that the United States is

10  "one Nation under God."

11  53. In view of the foregoing, Plaintiffs' rights under the Establishment Clause are

12  violated.

13

14  **<u>COUNT II</u>**

15  54. The introductory allegations set forth in paragraphs 1-48 are realleged herein.

16  55. Plaintiffs all acknowledge and stipulate to the fact that none of them are or

17  have been actually compelled to say the words, "under God," in the Pledge of

---

[9] "It degrades from the equal rank of Citizens all those whose opinions in Religion do not bend to those of the Legislative authority." Madison, James. *The writings of James Madison : comprising his public papers and his private correspondence, including numerous letters and documents now for the first time printed.* Gaillard Hunt, ed. 9 vols. (New York: G.P.Putnam's Sons; 1901), Vol. II, p. 188.

Allegiance. However, due to the setting and peer pressures, the three DoeChildren have all been coerced.[10]

56. Coercion of small children to recite a purely religious ideology – especially when it is completely contrary to the religious ideology their parents wish to have instilled in them – violates the children's rights to the Free Exercise of their religion.

**COUNT III**

57. The introductory allegations set forth in paragraphs 1-48 are realleged herein.

58. Part of a parent's free exercise right is the right to instill his or her religious values in his or her children without governmental interference or influence.

59. Defendants are interfering with and/or influencing Jan Doe's and Pat Doe's abilities to instill their religious values in their children.

60. Accordingly, the Doe parents' Free Exercise rights are being infringed.

**COUNT IV**

61. The introductory allegations set forth in paragraphs 1-48 are realleged herein.

62. Defendants have a duty to show equal respect to Plaintiff's religious beliefs.

---

[10] "I think there is a clear difference between compulsion (<u>Barnette</u>) and coercion (<u>Lee</u>)." <u>Elk Grove Unified Sch. Dist. v. Newdow</u>, 124 S. Ct. 2301, 2328 n.4 (2004) (Rehnquist, C.J., concurring).

63. In leading public school students (and others) in claiming that there exists a God, Defendants have breached, and continue to breach, that duty.

64. Additionally, by endorsing the religious notion that God exists, the now-religious Pledge creates a societal environment where prejudice against Atheists – and, thus, against Plaintiffs here – is perpetuated.

65. Assuming, *arguendo*, that there is a compelling interesting in leading children and other citizens in pledging allegiance to the flag, there is no such compelling interest in including purely Monotheistic religious dogma in any given pledge.

66. Accordingly, Plaintiffs' rights under the Due Process and Equal Protection provisions of the Fourteenth Amendment have been violated.

**COUNT V**

67. The introductory allegations set forth in paragraphs 1-48 are realleged herein.

68. There is a federal constitutional right of parenthood, which includes the right to instill the religious beliefs chosen by the parents, free of governmental interference. Wisconsin v. Yoder, 406 U.S. 205 (1972).[11]

---

[11] Of note is that the Supreme Court in Yoder highlighted that the law involved (i.e., remaining in school until age 16) was "neutral on its face." 406 U.S. at 220. Obviously, the Pledge statute is anything but neutral.

69. There is a corresponding right in children to be instructed in the religion of their parents, also free of governmental interference. Id., at 215, 233. See also dissenting opinion of Justice Douglas, generally.

70. Defendants interfere with those rights when they claim, as they do by having their teachers lead their classes in recitations of the Pledge, that there exists a God.

71. In fact, that interference is extreme, as Defendants – with their "power, prestige and financial support," Engel v. Vitale, 370 U.S. 421, 431 (1962) – tell the DoeChildren, in essence, "Your parents' religious beliefs are wrong."

72. Accordingly, Defendants have violated – and continue to violate – Jan Doe's and Pat Doe's federal rights of parenthood, as well as the concomitant rights of the DoeChildren.

**B. STATE COUNTS**

**COUNT VI**

73. The introductory allegations set forth in paragraphs 1-48 are realleged herein.

74. In addition to breaching their duties to protect Plaintiffs against this harm under federal law, Defendants are also breaching their duties under Article 6 (Morality and Piety) of the New Hampshire Constitution.

**15**

75. Specifically, by asking small schoolchildren to stand, place their hands over their hearts and affirm that ours is "one Nation under God," Defendants are establishing the subordination of those who deny the existence of any god to those who believe God exists.

**COUNT VII**

76. The introductory allegations set forth in paragraphs 1-48, 55 and 56 are realleged herein.

77. Defendants have violated the DoeChildren's Free Exercise rights under RSA § 169-D:23.

**COUNT VIII**

78. The introductory allegations set forth in paragraphs 1-48, and 68-71 are realleged herein.

79. Accordingly, Defendants have violated – and continue to violate – Jan Doe's and Pat Doe's state rights of parenthood, Sanborn v. Sanborn, 123 N.H. 740 (1983), as well as the associated state rights of the DoeChildren. Id.

**COUNT IX**

80. The introductory allegations set forth in paragraphs 1-48 are realleged herein.

**16**

81. The very purpose of the Pledge of Allegiance to the Flag – as can be appreciated from its legislative history – is to provide a means of demonstrating patriotism and engendering national unity.

82. By placing the religious words "under God" into the Pledge, Congress not only interfered with the patriotism and national unity the Pledge was meant to engender, but it actually fostered divisiveness.

83. Defendants' Pledge recitations lead to the same undesirable outcome.

84. Accordingly, in addition to its constitutional and statutory infirmities, the use of a Pledge of Allegiance containing the words "under God" is void as against public policy.

*****

85. It should be noted that Plaintiffs are making no objection to the recitation of a patriotic Pledge of Allegiance. The government is certainly within its right to foster patriotism, and it may certainly make the determination that recitation of a Pledge of Allegiance serves that purpose. However, government may not employ or include sectarian religious dogma towards this end.

**17**

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment as follows:

I.     To declare that by having their agents leading Plaintiffs and their peers in reciting the Pledge of Allegiance, Defendants HSD and DSD violate the Establishment and Free Exercise Clauses of the First Amendment, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, Article 6 of the New Hampshire Constitution, and New Hampshire RSA § 169-D:23;

II.    To declare that RSA § 194:15-c (New Hampshire School Patriot Act) is void as against public policy;

III.   To enjoin Defendants HSD and DSD from using the now-sectarian Pledge of Allegiance in the public schools within its jurisdictions;

IV.    To allow Plaintiffs to recover costs, expert witness fees, attorney fees, etc. as may be allowed by law; and

V.     To provide such other and further relief as the Court may deem proper.

**18**

Respectfully submitted,


  /s/ - Michael Newdow                        /s/ - Rosanna Fox

Michael Newdow, *pro hac vice*        Rosanna Fox, NH SBN: 17693
Counsel for Plaintiffs                12 Eldorado Circle
PO Box 233345
Sacramento  CA  95823             Nashua, NH  03062

Phone:   (916) 427-6669           Phone:   (603) 318-8479

E-mail:   NewdowLaw@cs.com       E-mail:   rosief13@comcast.net


October 27, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Civil Action No. 07-cv-356-SM**


**<u>CERTIFICATION</u>**


I hereby certify that a copy of the foregoing First Amended Complaint was filed

via the Court's CM/ECF filing system on this 27th day of October, 2008. It is

expected that it will be served electronically to all counsel of record by operation

of CM/ECF.



<u>/s/ Michael Newdow</u>                                      October 27, 2008

   Michael Newdow


**2**