# United States Court of Appeals
## For the First Circuit

---

No. 09-2473

FREEDOM FROM RELIGION FOUNDATION, ET AL.,

Plaintiffs, Appellants,

v.

HANOVER SCHOOL DISTRICT, ET AL.,

Defendants, Appellees.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

---

Before

Lynch, Chief Judge,
Howard and Thompson, Circuit Judges.

---

Michael Newdow with whom Rosanna Fox was on brief for appellants.

Nancy J. Smith, Senior Assistant Attorney General, with whom Michael A. Delaney, Attorney General, was on brief for appellee State of New Hampshire.

Lowell V. Sturgill, Jr., Attorney, Civil Division, with whom Tony West, Assistant Attorney General, Thomas P. Colantuano, United States Attorney, and Robert M. Loeb, Attorney, Civil Division, were on brief for appellee United States.

Kevin J. Hasson with whom Eric Rassbach and Luke Goodrich were on brief for appellees Muriel Cyrus et al.

Steven W. Fitschen on brief for The National Legal Foundation, amicus curiae.

Jay Alan Sekulow, Stuart J. Roth, Colby M. May, Shannon Demos, Tessa L. Dysart, and John Anthony Simmons, Sr., on brief for American Center for Law & Justice et al., amicus curiae.

John A. Eidsmoe, Roy S. Moore, and Benjamin D. DuPré on brief
for Foundation for Moral Law, amicus curiae.
    Jeremy D. Tedesco and David A. Cortman on brief for Alliance
Defense Fund and Cornerstone Policy Research, amicus curiae.

_____

November 12, 2010

_____

LYNCH, **Chief Judge**.  The question presented is whether the New Hampshire School Patriot Act, N.H. Rev. Stat. Ann. § 194:15-c ("the New Hampshire Act"), which requires that the state's public schools authorize a period during the school day for students to voluntarily participate in the recitation of the Pledge of Allegiance, violates the First or Fourteenth Amendment to the Constitution of the United States.  We hold that the statute is constitutional and affirm entry of judgment for defendants.

I.

Plaintiffs are The Freedom From Religion Foundation, its members Jan and Pat Doe, and their three children who attend New Hampshire public schools (collectively "FFRF").  Jan and Pat Doe identify themselves as atheist and agnostic, respectively, and their children as either atheist or agnostic.  At the time the amended complaint was filed in 2008, the eldest child was in sixth grade and attended a middle school jointly administered by New Hampshire's Hanover and Dresden school districts, while the younger two children were enrolled in a public elementary school operated by the Hanover district.  Pursuant to the New Hampshire Act, the Pledge of Allegiance ("the Pledge") is routinely recited in the Doe children's classrooms under the leadership of their teachers.[1]

---

[1]    FFRF alleges that the Doe children "have all been led by their public school teachers in recitations of the Pledge of Allegiance."  First Am. Complt. ¶ 43, ECF No. 52.  New Hampshire has not contested this.  The parties have not provided any other specific information about the operation of the statute such as the

The full text of the New Hampshire Act, enacted in 2002, is as follows:

> I. As a continuation of the policy of teaching our country's history to the elementary and secondary pupils of this state, this section shall be known as the New Hampshire School Patriot Act.
>
> II. A school district shall authorize a period of time during the school day for the recitation of the pledge of allegiance. Pupil participation in the recitation of the pledge of allegiance shall be voluntary.
>
> III. Pupils not participating in the recitation of the pledge of allegiance may silently stand or remain seated but shall be required to respect the rights of those pupils electing to participate. If this paragraph shall be declared to be unconstitutional or otherwise invalid, the remaining paragraphs in this section shall not be affected, and shall continue in full force and effect.

N.H. Rev. Stat. Ann. § 194:15-c.

Several aspects of the statute are worth note. By expressly requiring that student participation in the recitation of the Pledge be voluntary, New Hampshire has created a framework in which a school or educator would violate state law by any actions that rendered student participation involuntary. In addition, the statute allows any student not to participate in the recitation of the Pledge regardless of the student's reasons for non-participation. Those who do not participate may either stand silently or remain seated. The only obligation imposed on non-

procedures used or the number of students who participate.

-4-

participants is that they respect the rights of those students electing to participate.

The New Hampshire Act itself does not identify the words of the Pledge or otherwise specify which words should be used.  The parties accept that the words of the Pledge that are used in New Hampshire schools are those codified in federal law: "I pledge allegiance to the Flag of the United States of America, and to the Republic for which it stands, one Nation under God,[2] indivisible, with liberty and justice for all."  4 U.S.C. § 4 ("the federal Pledge statute").  The Pledge, which dates to 1892,[3] was first codified in 1942 to clarify the "rules and customs pertaining to the display and use of the flag of the United States of America." See Act of June 22, 1942, Pub. L. No. 77-623, 56 Stat. 377.  The words "under God" were added in 1954.  See Act of June 14, 1954, Pub. L. No. 83-396, 68 Stat. 249.[4]

---

[2]    Throughout the opinion, we refer to "God" as used in the text of the Pledge.

[3]    In 1892, as part of the commemoration of the 400th anniversary of Christopher Columbus's discovery of America, a national magazine for youth proposed that students in school recite the following affirmation: "I pledge allegiance to my Flag and the Republic for which it stands: one Nation indivisible, with Liberty and Justice for all." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 6 (2004) (citing J. Baer, The Pledge of Allegiance: A Centennial History, 1892-1992, at 3 (1992)) (internal quotation marks omitted).

[4]    The taking of a pledge of allegiance pre-dates Christianity.  Certain Athenian males, at puberty, took a longer pledge, the opening three sentences of which were: "We will never bring disgrace to this, our city, by any act of dishonesty or

The procedural history of the case before us is not complicated.  On November 1, 2007, FFRF filed a lawsuit against the United States Congress and United State of America ("the Federal Defendants"), the Hanover School District and Dresden School District ("the School Districts"), and School Administrative Unit 70.[5]  FFRF sought a declaration that the federal Pledge statute and the recitation of the Pledge in New Hampshire's public schools violated various provisions of the U.S. Constitution, the New

---

cowardice, nor ever desert our suffering comrades in ranks.  We will fight for the ideals and sacred things of the city, both alone and with many; we will revere and obey the city's law and do our best to incite a like respect and reverence in those above us who are prone to annul and set them at naught.  We will strive unceasingly to quicken the public's sense of civic duty, that thus, in all these ways, we will transmit this city not only not less, but greater, better, and more beautiful than it was transmitted to us."  Pledge of Allegiance, Lapham's Quarterly, Fall 2010, at 98.

[5]    FFRF's claim against School Administrative Unit 70, which controls the high schools that the Doe children will eventually attend, was dropped in the amended complaint.

Hampshire Constitution, and federal and state law,[6] and requested injunctive relief to ensure the end of these violations.[7]

The State of New Hampshire, the United States of America, and Muriel Cyrus--a student in the Hanover School district, joined by a group of other students, five of their parents, and the Knights of Columbus--filed motions to intervene to assist in the defense of the New Hampshire Act.[8]  The court granted these motions.

---

[6]    Specifically, FFRF sought a declaration that Congress violated the Establishment and Free Exercise Clauses in passing the Act of 1954, which added the words "under God" to the Pledge; that the words "under God" in the Pledge violated the Establishment and Free Exercise Clauses of the First Amendment, the Equal Protection component of the Fifth Amendment, and The Religious Freedom Restoration Act (RFRA); and that the School Districts, in having their agents lead the recitation of the Pledge, violated the Establishment and Free Exercise Clauses of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, the RFRA, Article 6 of the New Hampshire Constitution, and other provisions of New Hampshire state law.

[7]    FFRF asked the court to "demand" that Congress act to remove the words "under God" from 4 U.S.C. § 4; that the United States use its power to remove the words "under God" from 4 U.S.C. § 4; and that the School Districts cease and desist using the Pledge.

[8]    Although the United States was already a defendant with respect to FFRF's claim that 4 U.S.C. § 4 is unconstitutional on its face, it was not a defendant with respect to FFRF's claims challenging the recitation of the Pledge in New Hampshire schools, and it therefore moved to intervene as a defendant against what it took to be an as-applied challenge to 4 U.S.C. § 4.  While the district court allowed the United State to intervene, it ultimately rejected the argument that the federal statute was being "applied," as the statute merely prescribes the text of the Pledge and does not command any person to recite it or lead others in its recitation.

On August 7, 2008, the Federal Defendants filed a motion to dismiss the claims against them, which the court granted.[9]  The constitutionality of the federal Pledge statute, 4 U.S.C. § 4, is not at issue in this appeal.

FFRF filed an amended complaint on November 17, 2008, naming only the School Districts as defendants.  FFRF alleged that the School Districts had or would violate the rights of the Doe children under the First Amendment's Establishment and Free Exercise Clauses; the rights of the Doe parents under the Free Exercise Clause; the rights of both the Doe children and their parents under the Due Process and Equal Protection Clauses; and the Doe parents' federal constitutional rights of parenthood, as well as the Doe children's concomitant rights.[10]  The United States, New Hampshire, and Cyrus then renewed their motions to dismiss.[11]

On September 30, 2009, the district court dismissed all of FFRF's federal claims on their merits,[12] and issued a final

---

[9]     The Federal Defendants' motion also requested dismissal of the claims against the School Districts on the grounds that FFRF failed to state a claim, but this part of the motion was denied, as the School Districts had not filed a motion to dismiss.

[10]    FFRF also advanced a variety of state law claims that are not before us on appeal.

[11]    The district court construed these motions to dismiss as having been advanced by the School Districts as well.

[12]    Having done so, the court found that principles of comity counseled in favor of not exercising supplemental jurisdiction over the remaining state law claims and dismissed the state claims without prejudice.

judgment in favor of the United States, the School Districts, and Cyrus.

FFRF filed a timely notice of appeal from the district court's dismissal of its federal claims against the School Districts.

## II.

The issue on appeal is whether the New Hampshire Act requiring that its public schools provide a period for the voluntary recitation of the Pledge violates the Establishment Clause, Free Exercise Clause, Equal Protection Clause, or Due Process Clause.  We review de novo the district court's dismissal of FFRF's amended complaint under Rule 12(b)(6), accepting as true all well-pleaded facts in the complaint and drawing all reasonable inferences in the plaintiffs' favor.  <u>Sutliffe</u> v. <u>Epping Sch. Dist.</u>, 584 F.3d 314, 325 (1st Cir. 2009).  The issue is one of law.[13]  No material facts are in dispute.

A.        <u>The Pledge Does not Violate the Establishment Clause</u>

Under the Establishment Clause, "Congress shall make no law respecting an establishment of religion."  U.S. Const. amend. I.  Although applicable originally only against the federal

---

[13]    Every federal circuit court that has addressed a state pledge statute has rejected the claim of unconstitutionality.  <u>See</u> <u>Croft</u> v. <u>Perry</u>, No. 09-10347, 2010 WL 3991719 (5th Cir. Oct. 13, 2010); <u>Newdow</u> v. <u>Rio Linda Union Sch. Dist.</u>, 597 F.3d 1007 (2010); <u>Myers</u> v. <u>Loudoun County Pub. Sch.</u>, 418 F.3d 395 (4th Cir. 2005); <u>Sherman</u> v. <u>Cmty. Consol. Sch. Dist. 21</u>, 980 F.2d 437 (7th Cir. 1992).

government, the Establishment Clause was incorporated to apply to the states by the Fourteenth Amendment.  Everson v. Bd. of Educ., 330 U.S. 1, 8 (1947).

In determining whether a law runs afoul of this prohibition, the Supreme Court has articulated three interrelated analytical approaches: the three-prong analysis set forth in Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971); the "endorsement" analysis, first articulated by Justice O'Connor in her concurrence in Lynch v. Donnelly, 465 U.S. 668, 688 (1984), and applied by a majority of the Court in County of Allegheny v. ACLU, 492 U.S. 573 (1989); and the "coercion" analysis of Lee v. Weisman, 505 U.S. 577, 587 (1992).[14]  Before applying the three approaches to the case before us, we first address a few general matters.

FFRF's argument is that the School Districts' Pledge practices pursuant to the New Hampshire Act are religious for purposes of the First Amendment because the Pledge itself is a religious exercise in that it uses the phrase "under God."  FFRF argues that despite the voluntary nature of any student participation in the Pledge, the result is nonetheless the establishment by the state of religion.

---

[14]    There is an abundance of commentary from courts and others as to the relationship between these three analytical approaches.  See, e.g., Freethought Soc. of Greater Philadelphia v. Chester County, 334 F.3d 247, 256-62 (3rd Cir. 2003); Mellen v. Bunting, 327 F.3d 355, 370-71 (4th Cir. 2003); Adland v. Russ, 307 F.3d 471, 479 (6th Cir. 2002).  We bypass the question.

As to the first part of the argument, we begin with the unremarkable proposition that the phrase "under God" has some religious content.  In our view, mere repetition of the phrase in secular ceremonies does not by itself deplete the phrase of all religious content.[15]  A belief in God is a religious belief.  That the phrase has some religious content is demonstrated by the fact that those who are religious, as well as those who are not, could reasonably be offended by the claim that it does not.  See Myers v. Loudoun County Pub. Sch., 418 F.3d 395, 407 (4th Cir. 2005) ("Undoubtedly, the Pledge contains a religious phrase, and it is demeaning to persons of any faith to assert that the words 'under God' contain no religious significance."); see also Van Orden v. Perry, 545 U.S. 677, 695-96 (2005) (Thomas, J., concurring) ("[W]ords such as 'God' have religious significance. . . . Telling either nonbelievers or believers that the words 'under God' have no meaning contradicts what they know to be true.").

---

[15]    Even those who find no Establishment Clause violations under the doctrine of "ceremonial deism" do not necessarily deny that the phrase has some religious content.  See, e.g., Sherman, 980 F.2d at 445-47.  Justice Brennan, dissenting in Lynch v. Donnelly, 465 U.S. 668 (1984), famously said: "I would suggest that such practices as . . . the references to God contained in the Pledge of Allegiance can best be understood . . . as a form a 'ceremonial deism,' protected from Establishment Clause scrutiny chiefly because they have lost through rote repetition any significant religious content."  Id. at 716 (Brennan, J., dissenting) (footnote omitted).  We understand Justice Brennan to have considered the context and circumstances of the usage of the phrase.

-11-

That the phrase "under God" has some religious content, however, is not determinative of the New Hampshire Act's constitutionality.  This is in part because the Constitution does not "require complete separation of church and state." <u>Lynch</u>, 465 U.S. at 673.  The fact of some religious content is also not dispositive because there are different degrees of religious and non-religious meaning.  The Supreme Court has upheld a wide variety of governmental actions that have some religious content. <u>See</u>, <u>e.g.</u>, <u>Van Orden</u>, 545 U.S. at 681 (upholding the display of the Ten Commandments on the Texas State Capitol grounds); <u>County of Allegheny</u>, 492 U.S. at 578-79 (upholding the display of a Chanukah menorah outside a government building); <u>Lynch</u>, 465 U.S. at 670-72 (upholding the display of a Nativity scene in a public Christmas display); <u>Marsh</u> v. <u>Chambers</u>, 463 U.S. 783, 784-86 (1983) (upholding a state legislature's practice of opening each day with a prayer led by a chaplain paid with state funds).

The Pledge and the phrase "under God" are not themselves prayers, nor are they readings from or recitations of a sacred text of a religion.  That fact does not itself dispose of the constitutional question either.  There are many religiously infused practices that do not rise to the level of prayer that are clearly prohibited by the Establishment Clause.  In the public school context, the Supreme Court has struck down the teaching of creation

science, Edwards v. Aquillard, 482 U.S. 578 (1987), and the display of a Ten Commandments poster, Stone v. Graham, 449 U.S. 39 (1980).

Special considerations are involved when a claim involves public school students.  In the Establishment Clause context, public schools are different, in part because the students are not adults, and in part because a purpose of a public school is to inculcate values and learning.  "Recognizing the potential dangers of school-endorsed religious practice," the Supreme Court has "shown particular 'vigilan[ce] in monitoring compliance with the Establishment Clause in elementary and secondary schools.'" Bd. of Educ. of Westside Cmty. Sch. v. Mergens, 496 U.S. 226, 264 (1990) (alteration in original) (quoting Edwards, 482 U.S. at 583-584). For example, while the Court has upheld a state legislature's practice of opening each day with a prayer led by a chaplain paid with state funds, Marsh, 463 U.S. at 784-86, it has repeatedly found that prayers, invocations, and other overtly religious activities in public schools violate the Establishment Clause. See, e.g., Santa Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290 (2000) (invalidating a school policy of permitting the delivery of student-led prayer before high school football games); Lee, 505 U.S. 577 (invalidating the delivery of an invocation by a member of the clergy at graduation ceremonies); Wallace v. Jaffree, 472 U.S. 38 (1985) (invalidating a period of silence for meditation or voluntary prayer); Sch. Dist. of Abington Twp. v. Schempp, 374 U.S.

203 (1963) (invalidating a required Bible reading before each school day); <u>Engel</u> v. <u>Vitale</u>, 370 U.S. 421 (1962) (invalidating the saying of a daily prayer).

The question is where along this spectrum of cases falls the voluntary, teacher-led recitation of the Pledge, including the phrase "under God," by pupils in New Hampshire's public schools. We turn to the Court's different analytical measures for Establishment Clause claims.

### 1.   The Three-factored Lemon Analysis

Under the <u>Lemon</u> analysis,[16] a court must consider three factors: "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster 'an excessive government entanglement with religion.'" <u>Lemon</u>, 403 U.S. at 612-13 (quoting <u>Walz</u> v. <u>Tax Commission</u>, 397 U.S. 664, 674 (1970)) (citation omitted).  As FFRF does not allege entanglement, the third prong is not at issue here.

FFRF concedes that the New Hampshire Act has a secular purpose--the promotion of patriotism--but insists that this does

---

[16]   Although the <u>Lemon</u> analysis has been often criticized, including by members of the Supreme Court, <u>see</u> <u>Freethought Soc.</u>,334 F.3d at 256 (collecting cases), the Court has never expressly rejected it in cases such as this, and we have continued to apply it in the First Circuit.  <u>See</u>, <u>e.g.</u>, <u>Boyajian</u> v. <u>Gatzunis</u>, 212 F.3d 1, 4 (1st Cir. 2000).  The <u>Lemon</u> factors have, in the years since their first use in 1971, been described as "no more than helpful sign posts." <u>Van Orden</u> v. <u>Perry</u>, 545 U.S. 677, 685 (2005) (quoting <u>Hunt</u> v. <u>McNair</u>, 413 U.S. 734, 741 (1973)).

not end the inquiry.   FFRF argues that Congress had an impermissible religious purpose when it added the words "under God" to the text of the Pledge in 1954, and that this fact must be considered in our analysis.   Even if so, the argument does not go to the first factor.   We look at the purpose of New Hampshire when it enacted the statute in 2002, in the aftermath of the tragedy of September 11, 2001.   Because FFRF has stipulated that New Hampshire had a secular purpose,[17] its claim of impermissible governmental purpose clearly fails on the first prong of Lemon.

FFRF argues, under the second factor, that the principal or primary effect of the New Hampshire Act is the advancement of religion.   The Pledge's affirmation that ours is a "nation, under God" is not a mere reference to the fact that many Americans believe in a deity, nor to the undeniable historical significance of religion in the founding of our nation.   As the Supreme Court recognized in West Virginia State Board of Education v. Barnette, 319 U.S. 624 (1943), to recite the Pledge is to "declare a belief" and "affirm[] . . . an attitude of mind." Id. at 631, 633.   In reciting the Pledge, a student affirms a belief in its description of the nation.[18]   For this reason, it is unconstitutional under the

---

[17]   There is no claim that New Hampshire articulated a patriotic purpose as a subterfuge meant to avoid First Amendment strictures.

[18]   See Douglas Laycock, Theology Scholarships, The Pledge of Allegiance, and Religious Liberty: Avoiding the Extremes but Missing the Liberty, 118 Harv. L. Rev. 156, 228 (2004) ("To affirm

Free Speech Clause to <u>require</u> that students recite the Pledge in public schools. <u>See id.</u> at 642 ("If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein.").

In looking at the effect of the state's creation of a daily period for the voluntary recitation of the Pledge, we must consider the text as a whole and must take account of context and circumstances. <u>See, e.g.</u>, <u>Van Orden</u>, 545 U.S. at 701 (Breyer, J., concurring in the judgment) ("[T]o determine the message that the text here conveys, we must examine how the text is <u>used</u>. And that inquiry requires us to consider the context of the display."); <u>County of Allegheny</u>, 492 U.S. at 598 ("[T]he effect of a créche display turns on its setting."). It takes more than the presence of words with religious content to have the effect of advancing religion, let alone to do so as a primary effect.

As to context, there is no claim that a student is required to advance a belief in theism (or monotheism), nor is

---

this description necessarily affirms the propositions included in that description: that there is a God, and only one, of such a nature that a nation can be under that God."). <u>But</u> <u>see</u> <u>Elk Grove</u>, 542 U.S. at 26 (Rehnquist, C.J., concurring in the judgment) ("[T]he Pledge itself is a patriotic observance focused primarily on the flag and the Nation, and only secondarily on the description of the Nation.").

-16-

there any claim that a student is even encouraged by the faculty to say the Pledge if the student chooses not to do so.

By design, the recitation of the Pledge in New Hampshire public schools is meant to further "the policy of teaching our country's history to the elementary and secondary pupils of this state." N.H. Rev. Stat. Ann. § 194:15-c. "The very purpose of a national flag is to serve as a symbol of our country." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 6 (2004) (quoting Texas v. Johnson, 491 U.S. 397, 405 (1989)) (internal quotation marks omitted). As the Court has observed, "the Pledge of Allegiance evolved as a common public acknowledgment of the ideals that our flag symbolizes. Its recitation is a patriotic exercise designed to foster national unity and pride in those principles." Id. In reciting the Pledge, students promise fidelity to our flag and our nation, not to any particular God, faith, or church.

The New Hampshire School Patriot Act's primary effect is not the advancement of religion, but the advancement of patriotism through a pledge to the flag as a symbol of the nation.

2.    The Endorsement Analysis

Under the related endorsement analysis, courts must consider whether the challenged governmental action has the purpose or effect of endorsing, favoring, or promoting religion. County of Allegheny, 492 U.S. at 593-94. "The Establishment Clause, at the very least, prohibits government from appearing to take a position

on questions of religious belief or from 'making adherence to a religion relevant in any way to a person's standing in the political community.'" <u>County of Allegheny</u>, 492 U.S. at 593-94 (quoting <u>Lynch</u>, 465 U.S. at 687 (O'Connor, J., concurring)). A practice in which the state is involved may not "send[] the ancillary message to members of the audience who are nonadherents 'that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community.'" <u>Santa Fe</u>, 530 U.S. at 309-10 (quoting <u>Lynch</u>, 465 U.S. at 688 (O'Connor, J., concurring)).

At the heart of FFRF's claim is its argument that those students who choose not to recite the Pledge for reasons of non-belief in God are quite visibly differentiated from other students who stand and participate. The result, FFRF argues, is that the recitation of the Pledge makes the Doe children outsiders to their peer group on the grounds of their religion.

FFRF's premise is that children who choose not to recite the Pledge become outsiders based on their beliefs about religion. That premise is flawed. Under the New Hampshire Act, both the choice to engage in the recitation of the Pledge and the choice not to do so are entirely voluntary. The reasons pupils choose not to participate are not themselves obvious. There are a wide variety of reasons why students may choose not to recite the Pledge,

-18-

including many reasons that do not rest on either religious or anti-religious belief.  These include political disagreement with reciting the Pledge, a desire to be different, a view of our country's history or the significance of the flag that differs from that contained in the Pledge, and no reason at all.  Even students who agree with the Pledge may choose not to <u>recite</u> the Pledge.  Thus, the Doe children are not <u>religiously</u> differentiated from their peers merely by virtue of their non-participation in the Pledge.

Furthermore, the constitutionality of a state statute does not turn on the <u>subjective</u> feelings of plaintiffs as to whether a religious endorsement has occurred.  Rather, in the endorsement analysis, the court assumes the viewpoint of an "objective observer acquainted with the text, legislative history, and implementation of the statute."  <u>Santa Fe</u>, 530 U.S. at 308 (quoting <u>Wallace</u>, 472 U.S. at 73, 76 (O'Connor, J., concurring in the judgment)).[19]  Indeed, in a wide  variety of contexts, the law

---

[19]    Because it makes no difference to the outcome, we need not get into the nuances of which observer is at play: for instance, whether the relevant observer is any adult, the parent, the student, the mature student, or the immature student.  There are cases in which the Supreme Court has assumed the viewpoint of a high school student affected by the state action.  <u>See</u>, <u>e.g.</u>, <u>Santa Fe Indep. Sch. Dist.</u> v. <u>Doe</u>, 530 U.S. 290, 308 (2000) (referring to the view of "an objective Santa Fe High School student"); <u>Bd. of Educ. of Westside Cmty. Sch.</u> v. <u>Mergens</u>, 496 U.S. 226, 249-52 (1990) (referring to an objective observer in the position of a secondary school student).  But the Second Circuit has cautioned: "We cannot conclude that it makes equal sense to treat a first or second grader as the 'objective observer' who can

rejects tests relying on subjectivity and utilizes the analytic device of asking how a reasonable and objective observer would view the matter in question.   See, e.g., Capitol Square Review & Advisory Bd. v. Pinette, 515 U.S. 753, 779-781 (1995) (O'Connor, J., concurring in part and concurring in the judgment) ("In this respect, the applicable observer is similar to the 'reasonable person' in tort law, who 'is not to be identified with any ordinary individual, who might occasionally do unreasonable things,' but is 'rather a personification of a community ideal of reasonable behavior, determined by the [collective] social judgment.'") (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 175 (5th ed. 1984)).

Adopting the view of the objective observer fully aware of the relevant circumstances, we conclude there has been no endorsement of religion.   The state legislature passed the New Hampshire Act in the aftermath of September 11, 2001 with the intent of fostering patriotism, see, e.g., N.H.S. Jour. 945-67 (2002), and that is the statute's effect.   Taken in the context of the words of the whole Pledge, the phrase "under God" does not convey a message of endorsement.

_____

take account of the text, history, and implementation of a challenged policy." Skoros v. City of New York, 437 F.3d 1, 23 (2d Cir. 2006); see also Good News Club v. Milford Cent. Sch., 533 U.S. 98, 115 (2001) ("[T]o the extent we consider whether the community would feel coercive pressure to engage in the Club's activities, the relevant community would be the parents, not the elementary school children.") (internal citation omitted).

The importance of context in the endorsement inquiry is made clear by two cases in which the Supreme Court has addressed the display of crèches at Christmas.  In the first case, Lynch, the Court concluded that although a crèche displayed by the city was itself religious, the fact that it was located in a broader holiday display clarified to the reasonable observer that the city was, as part of the holiday, simply acknowledging religion with the crèche and not endorsing it.  Lynch, 465 U.S. at 679-80.  By contrast, the Court in County of Allegheny concluded that a display of a crèche in a county courthouse with an angel bearing a banner proclaiming "Gloria in Excelsis Deo," with no surrounding secular objects to change the message conveyed, was an unconstitutional endorsement of religion.  County of Allegheny, 492 U.S. at 598.

Along this spectrum, the two word phrase "under God" in the thirty-one words of the Pledge is much closer to the crèche at issue in Lynch.  The phrase is surrounded by words that modify its significance--not by changing its meaning, but rather by providing clarity to the message conveyed and its purpose.  Cf. Lynch, 465 U.S. at 692 (O'Connor, J., concurring) ("Although the religious and indeed sectarian significance of the crèche . . . is not neutralized by the setting, the overall holiday setting changes what viewers may fairly understand to be the purpose of the display.").  Here, the words "under God" appear in a pledge to a

flag--itself a secular exercise, accompanied by no other religious language or symbolism.

We reject FFRF's claim of unconstitutional endorsement.

### 3.     The Coercion Analysis

Relying heavily on Lee, FFRF finally argues that the recitation of the Pledge in public school classrooms unconstitutionally coerces the Doe children to "recite a purely religious ideology."

Lee invalidated a public school's practice of inviting members of the clergy to give a nonsectarian prayer at its graduation ceremonies. Lee, 505 U.S. at 581-82. Although attendance at the ceremonies and participation during the prayer were voluntary, the Court found that there was indirect pressure on attending students to stand or maintain respectful silence during the prayer, and that because silence during prayer signifies participation, this practice was unconstitutional. Id. at 598. Lee held that "the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise." Id. at 587.

Coercion need not be direct to violate the Establishment Clause, but rather can take the form of "subtle coercive pressure" that interferes with an individual's "real choice" about whether to participate in the activity at issue. Lee, 505 U.S. at 592, 595. In public schools, this danger of impermissible, indirect coercion

is most pronounced because of the "young impressionable children whose school attendance is statutorily compelled." Schempp, 374 U.S. at 307 (Goldberg, J., concurring).  As Lee stated, "prayer exercises in public schools carry a particular risk of indirect coercion.  The concern may not be limited to the context of schools, but it is most pronounced there." Lee, 505 U.S. at 592.

FFRF contends that the Pledge, while not a prayer, is more problematic than the prayer at issue in Lee.  It argues that the students in this case are younger and more impressionable; that they are led by teachers whom they respect as authorities, rather than by a member of the clergy whom they do not know; that those who participate are encouraged to verbalize the words, rather than merely listen; that the Pledge occurs every day, rather than once or twice in their school career; that a refusal to participate in the recitation of the Pledge is more obvious than refusing to listen to a prayer; and that unlike at a graduation ceremony, the students do not have their parents next to them to support them in their non-participation.  These concerns do not make the New Hampshire Act unconstitutional.  At least two factors distinguish Lee from this case.

First, like other courts that have reviewed the Pledge, we think it relevant that the religious content of the phrase "under

God" is couched in a non-religious text.[20]   This fact is not dispositive, but it is significant.   It removes the case from the direct scope of <u>Lee</u>, where the Court explained: "These dominant facts mark and <u>control the confines</u> of our decision: State officials direct the performance of a <u>formal religious exercise</u> . . . ."  <u>Lee</u>, 505 U.S. at 586 (emphasis added).   Recitation of the Pledge is not a formal religious exercise.

Second, the logic of <u>Lee</u> does not apply directly to the case before us.   The <u>Lee</u> finding of unconstitutional coercion can be read to result from a three-step analysis involving two premises and a conclusion.   The Court found that students were being coerced into silence during the saying of the prayer; that silence was, in the eyes of the community, functionally identical to participation in the prayer; and that therefore, students were being functionally

---

[20]   In addressing the claim that the recitation of a pledge of allegiance including the phrase "under God" is unconstitutional under <u>Lee</u>, other courts have reasoned that the cases are fundamentally different because saying the pledge is not itself a religious exercise.  <u>See</u>, <u>e.g.</u>, <u>Croft</u>, 2010 WL 3991719, at *10 ("A pledge of allegiance to a flag is not a prototypical religious activity.");  <u>Rio Linda</u>, 597 F.3d at 1038 ("We agree that the students in elementary schools are being coerced to listen to the other students recite the Pledge.   They may even feel induced to recite the Pledge themselves. . . . But the main distinction is this: Here, the students are being coerced to participate in a patriotic exercise, not a religious exercise.");  <u>Myers</u>, 418 F.3d at 408 ("The indirect coercion analysis discussed in <u>Lee</u>, <u>Schempp</u>, and <u>Engel</u>, simply is not relevant in cases, like this one, challenging non-religious activities.   Even assuming that the recitation of the Pledge contains a risk of indirect coercion, the indirect coercion is not threatening to establish religion, but patriotism.").

coerced into participation in the prayer in violation of the Constitution.[21]

A key premise is different here. While in <u>Lee</u>, "the act of standing or remaining silent was an expression of participation in the rabbi's prayer," <u>Lee</u>, 505 U.S. at 593, silence by students is not an expression of participation in the Pledge. Rather, a student who remains silent during the saying of the Pledge engages in overt non-participation by doing so, and this non-participation is not itself an expression of either religious or non-religious belief.

FFRF's claim of unconstitutional coercion under <u>Lee</u> fails.

B.        <u>The Pledge Does Not Violate the Free Exercise Clause</u>

Under the Free Exercise Clause, the government may not "(1) compel affirmation of religious beliefs; (2) punish the

---

[21]    <u>See</u> <u>Lee</u> v. <u>Weisman</u>, 505 U.S. 577, 593 (1992) ("The undeniable fact is that the school district's supervision and control of a high school graduation ceremony places public pressure, as well as peer pressure, on attending students to stand as a group or, at least, maintain respectful silence during the invocation and benediction. . . . There can be no doubt that for many, if not most, of the students at the graduation, the act of standing or remaining silent was an expression of participation in the rabbi's prayer. That was the very point of the religious exercise. It is of little comfort to a dissenter, then, to be told that for her the act of standing or remaining in silence signifies mere respect, rather than participation. What matters is that, given our social conventions, a reasonable dissenter in this milieu could believe that the group exercise signified her own participation or approval of it. Finding no violation under these circumstances would place objectors in the dilemma of participating, with all that implies, or protesting.").

expression of religious doctrines it believes to be false; (3) impose special disabilities on the basis of religious views or religious status; or (4) lend its power to one side or the other in controversies over religious authorities or dogma." Parker v. Hurley, 514 F.3d 87, 103 (1st Cir. 2008). The First Amendment's prohibition on laws "prohibiting the free exercise" of religion is incorporated against the states by the Fourteenth Amendment. Cantwell v. Connecticut, 310 U.S. 296, 303 (1940).

FFRF contends that the recitation of the Pledge in the Doe children's classrooms violates their ability to freely believe in atheism or agnosticism, and places an unconstitutional burden on the Doe parents' free exercise right to instill their religious values in their children. This claim is foreclosed by Parker.

In Parker, we explained that "[p]ublic schools are not obliged to shield individual students from ideas which potentially are religiously offensive, particularly when the school imposes no requirement that the student agree with or affirm those ideas, or even participate in discussions about them." Parker, 514 F.3d at 106. Because the Doe children allege mere exposure to the religious content of the Pledge, they cannot state a claim under the Free Exercise Clause, nor can their parents, as "the mere fact that a child is exposed on occasion in public school to a concept offensive to a parent's religious belief does not inhibit the parent from instructing the child differently." Id. at 105.

C. _____ The Pledge Does Not Violate the Equal Protection Clause

Under the Equal Protection Clause of the Fourteenth Amendment, the Constitution "guarantees that those who are similarly situated will be treated alike." In re Subpoena to Witzel, 531 F.3d 113, 118 (1st Cir. 2008). Invoking the Equal Protection Clause, FFRF contends that the School Districts have a duty to show equal respect for the Does' atheist and agnostic beliefs, that they are in breach of this duty by leading students in affirming that God exists, and that they created a social environment that perpetuates prejudice against atheists and agnostics. However, the New Hampshire Act does "not require different treatment of any class of people because of their religious beliefs," nor does it "give preferential treatment to any particular religion." Wirzburger v. Galvin, 412 F.3d 271, 283 (1st Cir. 2005). Rather, as the district court found, "it applies equally to those who believe in God, those who do not, and those who do not have a belief either way, giving adherents of all persuasions the right to participate or not participate in reciting the pledge, for any or no reason." Therefore, FFRF's equal protection claim fails.

D. _____ The Pledge Does Not Violate the Due Process Clause

FFRF's final allegation is that the recitation of the Pledge in the Doe children's classrooms violates the Doe parents' fundamental constitutional right of parenthood protected by the Due Process Clause of the Fourteenth Amendment. FFRF argues that this

right is  embraced within the general right of parenthood recognized by <u>Troxel</u> v. <u>Granville</u>, 530 U.S. 57, 65 (2000).  Because this claim is adverted to in a perfunctory manner, unaccompanied by any effort at developed argumentation, it is waived.  <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990).  In any event, the claim lacks merit, as "the substantive due process clause . . . does not give [parents] the degree of control over their children's education that their requested relief seeks."  <u>Parker</u>, 514 F.3d at 102-03.

### III.

We hold that the New Hampshire School Patriot Act and the voluntary, teacher-led recitation of the Pledge by the state's public school students do not violate the Constitution.  We affirm the order and judgment of the district court dismissing FFRF's complaint.